[No. C024191. Third Dist. Nov. 13, 1997.]

STEVEN J. OBOS, Plaintiff and Appellant, v.
SCRIPPS PSYCHOLOGICAL ASSOCIATES, INC., et al., Defendants and
Respondents.

**COUNSEL**

Joseph A. Hoffman for Plaintiff and Appellant.

Pinnel & Kingsley, A. Jeffrey Dehart and Paul Nicholas Boylan for Defendants and Respondents.

**OPINION**

**NICHOLSON, J.**—This lawsuit raises the issue of the application of judicial privilege to communications regarding a third party, made in the course of a court-ordered child custody and placement investigation in connection with a child custody dispute. In the course of such an investigation, a court-appointed psychologist was told the mother's boyfriend, Steven J. Obos, had been dishonorably discharged from the military and fired from his job for dishonesty. The psychologist discussed these allegations with the children's attorney and with their therapist. Obos then filed this action for defamation and invasion of privacy, asserting the communications with the children's attorney and therapist damaged his reputation, and contending the judicial privilege did not apply to these communications because Obos was not a party to the underlying action. The trial court granted defendants' motion for summary judgment, finding the communications were privileged. Obos appeals; we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

As Obos acknowledged in the underlying summary judgment proceedings, the following facts are undisputed: In 1993, Connie Sifers was involved in a dissolution/child custody lawsuit (litigation) with her former husband, Darrell Sifers, in Sacramento County Superior Court. Throughout the litigation, Connie Sifers and her children were represented by Attorney Judith Winn. During the litigation, a motion was filed to obtain a court-appointed psychologist to recommend, among other issues, placement and custody of the

Sifers's children. The motion was followed by a stipulation between the parties agreeing to the appointment of a psychologist.

Among the psychologists considered for the court appointment was Sidney K. Nelson of Scripps Psychological Associates, Inc. The parties stipulated to use Nelson and he was then appointed by the court to become the court-appointed psychologist pursuant to Evidence Code section 730.[1] Pursuant to this appointment, Nelson conducted an investigation in order to present the court with his recommendation regarding custody and placement of the Sifers's children. Nelson's investigation included the receipt and review of materials and information from the parties, their attorneys, and third parties. As Nelson was preparing his report, he discussed information he had obtained about Obos with Winn and with Ty Yarnell, the children's therapist. When Nelson subsequently filed his report with the court, the report did not refer to the allegations and recommended Connie Sifers retain primary custody of the children. This lawsuit followed.

## DISCUSSION

 Generally, a publication made in the course of a judicial proceeding is absolutely privileged. Civil Code section 47 creates an absolute privilege for communications "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." (*Silberg* v. *Anderson* (1990) 50 Cal.3d 205, 212 [266 Cal.Rptr. 638, 786 P.2d 365].) Obos's challenge rests on the latter two elements, noting "[w]hile it is uncontested . . . that Dr. Nelson made these comments while associated with a judicial proceeding and that he is a participant authorized by law, the remaining elements are unsatisfied."

The record contains a declaration by Nelson which states he learned the allegedly defamatory information from Sheriff's Detective Barbara Bravos, who was investigating allegations of child abuse against the children's father. When Obos instituted this lawsuit, Nelson apparently did not recall discussing Bravos's contentions with Winn or Yarnell. In responding to Obos's interrogatories, Nelson stated, "None of this information was stated in my written report to the Court regarding this family. Additionally, there is no logical reason why I would have provided this information to anyone

---

[1]Evidence Code section 730 provides, in pertinent part: "When it appears to the court, at any time before or during the trial of an action, that expert evidence is or may be required by the court or by any party to the action, the court on its own motion or on motion of any party may appoint one or more experts to investigate, to render a report as may be ordered by the court, and to testify as an expert at the trial of the action relative to the fact or matter as to which the expert evidence is or may be required. . . ."

involved in this case. The only time I may have made any statements to anyone regarding [Obos] may have been during expert testimony, under oath, in Department 11 of the Sacramento County Superior Court. No other statements were made to anyone associated with this matter." This interrogatory response is central to Obos's lawsuit; Obos relies heavily on this response as proving Nelson's communications had no connection or logical relation to the case.[2]

The object of the child custody litigation was to determine which parent should have custody of the Sifers's children. Toward this end, the court appointed Nelson to render a recommendation consistent with the children's best interests. The record indicates Nelson's role included "investigat[ing] the living arrangements with respect to anywhere the children were going to be." Obos was the mother's boyfriend, and accompanied the mother and children to the children's therapy sessions and to their appointments with Nelson. Given such involvement, Obos likely would impact the children's environment if they lived with their mother. With respect to whether the communications had some connection or logical relation to the case, obviously informing the children's counsel and therapist of the allegations, and inquiring as to their veracity, furthered the goal of ascertaining which custodial arrangement was in the children's best interests. When Nelson was unable to verify this information, he made no mention of it in his report. The trial court concluded there was "no material issue of fact as to whether the statements [about Obos] were made [by Nelson] to achieve the objects of litigation." We concur.[3]

---

[2]Summary judgment is proper where there is no issue of material fact and the moving party is entitled to judgment as a matter of law. Of the facts Obos disputed, two were not material: whether he attended all sessions with Nelson or attended only "on occasion," and whether someone other than Detective Bravos supplied the allegedly defamatory information to Nelson. The remaining disputed "fact" actually involved a conclusion of law which we address herein: whether Nelson's disclosure of the allegedly defamatory information to Winn and Yarnell was outside the "course and scope" of Nelson's role as court-appointed psychologist. Obos cited three documents in support of his contention Nelson acted outside the scope of his appointment: (1) Attorney Winn's deposition, in which she testified to the fact Nelson "expressed some concerns with respect to the circumstances surrounding Mr. Obos'[s] termination from an employment and also his discharge from the military . . . stat[ing] that Mr. Obos had been discharged for stealing"; (2) Connie Sifers's deposition, in which she testified her children's therapist told her Obos "had a dishonorable discharge from the Marine Corps and was fired from his job at Gold River Racquet Club for stealing a large sum of money," and the therapist claimed she acquired this information from a telephone conversation with Nelson; (3) Nelson's interrogatory response, in which he stated, "[T]here is no logical reason why I would have provided this information to anyone involved in this case."

[3]In his opening brief, Obos asserts, "The court made a factual determination deciding that the statements by Dr. Nelson were not logically related to the underlying action." As an initial matter, the trial court made no such determination. Indeed, the court impliedly found a connection or logical relation to the case by virtue of concluding "the umbrella of privilege

Obos contends Nelson "should not be able to utilize the affirmative defense of privilege" because "the defamed person was not a party to the underlying action and was given no opportunity to cross examine the witness." Obos provides no authority to support this proposition.[4]

■ The judicial privilege "is accorded not only to parties but to witnesses, even where their testimony is allegedly perjured and malicious." (*Kachig* v. *Boothe* (1971) 22 Cal.App.3d 626, 641 [99 Cal.Rptr. 393].) "[T]he privilege is not restricted to the actual parties to the lawsuit but need merely be connected or related to the proceedings." (*Adams* v. *Superior Court* (1992) 2 Cal.App.4th 521, 529 [3 Cal.Rptr.2d 49].) A defendant "may rely upon the defense of judicial privilege, Civil Code section 47, provided that there is some reasonable connection between the act claimed to be privileged and the legitimate objects of the lawsuit in which that act took place. The privilege is broadly applied to protect most publications within lawsuits provided there is some connection between the lawsuit and the publication. [Citation.] *Any doubt as to whether the privilege applies is resolved in favor of applying it.* [Citations.]" (*Ibid.*, italics added.)

Accordingly, the focus of the applicability of judicial privilege lies in whether the publication was connected or related to the underlying proceedings; the focus is not the status of the plaintiff in the subsequent proceeding. Indeed, even lack of standing does not vitiate the privilege. "[L]ack of standing could constitute [a] lack of connection with the lawsuit . . . if a complete stranger to the action filed irrelevant but scurrilous matter in a proceeding. The lack of connection, not the lack of standing, would be the reason for denying the privilege in such a case. But here, as pointed out, there was ample connection; relevant evidence was offered . . . . Accordingly the reason for denying the privilege—lack of connection with the proceeding—does not apply here." (2 Cal.App.4th at p. 530.)

■ Permitting nonparties to the underlying action, such as plaintiff, to sue on the basis of statements otherwise protected by the judicial privilege

here exists as a matter of law." To the extent Obos may have intended to assert the existence of a logical relationship is a factual, rather than a legal, determination and thus inappropriate for resolution by summary judgment, he is mistaken. "If there is no dispute as to the operative facts, the availability of the [judicial] privilege is a matter of law which the court may determine on summary judgment. . . ." (*Susan A.* v. *County of Sonoma* (1991) 2 Cal.App.4th 88, 93 [3 Cal.Rptr.2d 27], citation omitted.)

[4]Obos states: "*Gootee* [v. *Lightner* (1990) 224 Cal.App.3d 587 [274 Cal.Rptr. 697]] establishes that for a defendant to claim the privilege, the plaintiff must have been a party to the underlying action. Steven Obos was not a party to the underlying action, and therefore the defendant has not met all of the elements to assert his affirmative defense." Nowhere does *Gootee* v. *Lightner* (1990) 224 Cal.App.3d 587 [274 Cal.Rptr. 697] infer, state, require, or hold that a defendant may not invoke the judicial privilege unless the plaintiff was a party to the underlying action. (See *id.* at pp. 592-593.)

would promote chaos, particularly in the realm of custody determinations. Non-parties might become factors in custody determinations for any number of reasons. Certainly a custody evaluation might consider the impact upon the child—both positive and negative—of other individuals residing in (or even merely frequenting) the parent's home, such as a new spouse, other children, grandparent, friend, or roommate. We will not hamstring a court-appointed psychologist's efforts to ascertain the best environment for children by permitting such individuals subsequently to sue the psychologist for alleged defamation when the psychologist's communications otherwise satisfy the requisites of Civil Code section 47.[5]

Finally, Obos argues the result here results in a miscarriage of justice. We disagree. Moreover, the Legislature did not create a miscarriage-of-justice exception to Civil Code section 47, and we are not free to create one. (See *Kachig* v. *Boothe, supra,* 22 Cal.App.3d at p. 642.) Nelson's communications to Winn and Yarnell were protected by the judicial privilege.

We find no merit to Obos's contentions.[6]

DISPOSITION

The judgment is affirmed. Respondents shall recover their costs on appeal.

Scotland, Acting P. J., and Callahan, J., concurred.

---

[5]The California courts have extended the judicial privilege to prospective, as well as actual, litigants (*Izzi* v. *Rellas* (1980) 104 Cal.App.3d 254, 264 [163 Cal.Rptr. 689]), and to statements by child care professionals made in the course of investigating alleged child abuse. (*Spitler* v. *Children's Institute International* (1992) 11 Cal.App.4th 432, 438-439 [14 Cal.Rptr.2d 197].) Although the plaintiffs in the published cases in this area predominantly had been parties to the underlying proceedings, at least one case involved a non-party plaintiff. (*Whelan* v. *Wolford* (1958) 164 Cal.App.2d 689 [331 P.2d 86] [plaintiff's husband applied for variance; plaintiff subsequently sued variance opponents for defamation based on letter filed with planning commission which protested the variance application].)

[6]Respondents requested sanctions. Although Obos's appellate contentions are unmeritorious, we do not find them frivolous and accordingly decline to award sanctions. (Cf. *In re Marriage of Flaherty* (1982) 31 Cal.3d 637 [183 Cal.Rptr. 508, 646 P.2d 179].)