[No. S142496. Apr. 5, 2007.]

JACOB B., Plaintiff and Respondent, v.
COUNTY OF SHASTA et al., Defendants and Appellants.

950

**COUNSEL**

Brickwood Law Office, Gary Brickwood and Monique Grandaw for Defendants and Appellants.

Halkides, Morgan & Kelley, Arthur L. Morgan, Paul C. Meidus and John P. Kelley for Plaintiff and Respondent.

OPINION

**CHIN, J.**—The litigation privilege of Civil Code section 47, subdivision (b) (section 47(b)), generally protects from tort liability any publication made in connection with a judicial proceeding. We must decide whether the privilege protects a letter that a supervisor of a county victim witness program wrote in connection with a family law proceeding that involved visitation rights. The letter provided information regarding whether one of the persons being considered for visitation had molested his nephew a decade earlier. We conclude that the litigation privilege does protect the letter. We must also decide whether the privilege protects against a cause of action based on California's constitutional right to privacy. Consistent with our frequent statement that the privilege protects against all tort causes of action except for malicious prosecution, including those alleging invasion of privacy, we also conclude that the privilege does extend to causes of action based on the constitutional right to privacy.

Accordingly, we affirm the judgment of the Court of Appeal, which reached the same conclusions.

## I. FACTS AND PROCEDURAL HISTORY

Because neither party petitioned the Court of Appeal for a rehearing, we take our facts largely from that court's opinion. (*Richmond v. Shasta Community Services Dist.* (2004) 32 Cal.4th 409, 415 [9 Cal.Rptr.3d 121, 83 P.3d 518]; see Cal. Rules of Court, rule 8.500(c)(2).)

In 1993, Laura and Charles B. reported to the Shasta County Sheriff's Office that Charles's 15-year-old brother, plaintiff Jacob B., had molested their five-year-old son, B.B.[1] The investigating officer interviewed B.B. and believed that a molestation had occurred, but the case was not prosecuted because of B.B.'s young age and inability to communicate adequately. Laura applied to the county's victim witness program (Victim Witness), a subdivision of the district attorney's office, for victim benefits on B.B.'s behalf. Victim Witness is authorized to compensate a victim of any criminal act, even if there was no prosecution or conviction. (See Gov. Code, §§ 13950, subd. (a), 13955.) To determine whether benefits are payable, Victim Witness reviews medical and police reports and other documents and decides, using a preponderance of the evidence standard, whether a crime occurred. Victim Witness approved Laura's claim and, as a result, B.B. received $10,000 worth of counseling services. Victim Witness transferred information regarding the

---

[1] For convenience and to minimize confusion, we will generally use the first names of these family members.

case into a statewide victims of crime (VOX) computer database. B.B. was identified in the VOX system as the victim of a molestation by his uncle Jacob. The system listed B.B.'s date of birth but had no space for the perpetrator's birth date.

In 1999, Laura and Charles were divorced. Then Laura married Todd B. (no relation to Charles or Jacob), while Charles married Stephanie B. Todd and Stephanie had been married to each other but also were divorced in 1999. Todd and Stephanie had three biological sons together (the three sons). As a result, Charles and Stephanie lived together with the three sons, while B.B. (Charles's biological son with Laura) lived with Todd and Laura. All of the children were minors at the time. When Charles and Laura were divorced, they stipulated that B.B. would have no contact with either his uncle Jacob or his paternal grandparents (the grandparents). Similarly, Stephanie and Todd's dissolution decree prohibited contact between the three sons and Jacob and the same grandparents.

Stephanie and Charles became unhappy with the court order prohibiting contact between the three sons and Jacob or the grandparents. Consequently, an ongoing dispute existed in Todd and Stephanie's family law proceedings regarding whether the three sons should be able to visit Jacob and the grandparents. On February 11, 2003, Stephanie (now Charles's wife) filed an order to show cause in Tehama County Superior Court asking the family law court to permit visitation between the three sons and Jacob and the grandparents due to the financial and emotional hardships the existing visitation restrictions caused the stepfamilies.

On February 21, 2003, Laura (now Todd's wife) came to the Victim Witness office in Shasta County, crying and distraught. She told Victim Witness advocate Carol Gall and Gall's supervisor, defendant Stephanie Lloyd, that a court hearing was scheduled that day in Tehama County in which the judge would decide whether her son B.B. would have contact with his uncle Jacob. She asked them to help her by writing to the court. As a result, Lloyd signed and gave Laura a letter that is at the heart of this litigation (sometimes referred to as the February 21 letter).

Gall obtained information from the VOX system indicating that Jacob had molested his nephew B.B., and that B.B. had received $10,000 in Victim Witness benefits. VOX also indicated that criminal proceedings were closed due to insufficient evidence. Gall then wrote a letter for Lloyd's signature. Dated February 21, 2003, and written on the Shasta County District Attorney's Office stationery, the letter was addressed "To Whom It May Concern." It stated: "In November 1993, [Laura] came into our Victim Witness Center and established a claim for her son [B.B.] who was a victim of child

molestation. [B.B.] was a victim of his uncle [Jacob] case # 93-18882 which was investigated by Shasta County Sheriff Department. The Incident took place at [address]. The family has used all of [B.B.'s] Victim Witness benefits for counseling due to the crime, which was $10,000." Lloyd signed the letter, listing her title as "Victim Advocate Supervisor."

Lloyd assumed that Jacob was an adult at the time of the molestation because the VOX system referred to him as B.B.'s uncle and did not indicate he was a minor. Both she and Gall understood that the letter would be presented to a judge in family law court in Tehama County. Lloyd used the salutation, "To Whom It May Concern" because she did not know the judge's name and thought using "Dear Mr. Judge" or "Your Honor" would sound awkward. In fact, the Tehama County court proceeding involved visitation questions regarding the three sons and Jacob and the grandparents, and it did not directly involve visitation between Jacob and B.B. However, Laura felt that if the no-contact order were dropped as to the three sons, removal of Jacob's prohibition on visiting B.B. would inexorably follow. Indeed, Charles had already sought to lift the restriction on contact between Jacob and B.B. because the three sons and B.B. usually traveled together for family visitation purposes.

Laura gave the letter to her husband Todd, who attached it to his declaration opposing Stephanie's request to modify visitation and filed it in Tehama County Superior Court. When Stephanie saw the letter, she gave it to Jacob.

In July 2003, Jacob filed this lawsuit against defendants County of Shasta and Lloyd. The lawsuit stated several causes of action including, as relevant here, one for invasion of privacy based on the February 21 letter. A jury trial ensued. At the end of plaintiff's case, defendants moved for a nonsuit based on section 47(b)'s litigation privilege. The trial court ruled that the privilege protected the letter and dismissed all causes of action except the one for invasion of privacy. It also ruled that Jacob's state constitutional privacy interests overrode the litigation privilege and denied the nonsuit as to the invasion of privacy cause of action based on the California Constitution. At the end of trial, the jury rendered a verdict in Jacob's favor of $30,000 against defendants. The trial court entered judgment accordingly.

Defendants appealed. The Court of Appeal held that the litigation privilege protected the letter against all of the causes of action, including the one based on the constitutional right of privacy. It reversed the judgment and remanded the matter to the trial court with directions to grant the motion for nonsuit in its entirety and enter judgment in favor of defendants. We granted plaintiff's petition for review.

## II. DISCUSSION

Section 47(b) defines a "privileged publication" as including one made "[i]n any . . . judicial proceeding . . . ." The trial court ruled that this litigation privilege attached to the February 21 letter, and that it protected defendants from liability for all causes of action except for one based on the state constitutional right of privacy. The Court of Appeal held that the privilege protected defendants from liability for all of the causes of action, including the constitutionally based one. Plaintiff contends that both the trial court and the Court of Appeal erred in finding the letter privileged at all. He argues the litigation privilege does not protect the letter from any of the causes of action. He also contends that, even if the litigation privilege attaches to the letter, it does not extend to the constitutional right of privacy. He argues that section 47(b), being a mere statute, must yield to the constitutional right to privacy.

We discuss these two contentions in order.

### A. *Whether the Litigation Privilege Protects the February 21 Letter*

■ We have discussed the basic principles underlying section 47(b)'s litigation privilege in many cases. The privilege "applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved." (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 212 [266 Cal.Rptr. 638, 786 P.2d 365], and quoted in *Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1057 [39 Cal.Rptr.3d 516, 128 P.3d 713].) "The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." (*Silberg v. Anderson, supra,* at p. 212.)

"The purposes of section 47, subdivision (b), are to afford litigants and witnesses free access to the courts without fear of being harassed subsequently by derivative tort actions, to encourage open channels of communication and zealous advocacy, to promote complete and truthful testimony, to give finality to judgments, and to avoid unending litigation." (*Rusheen v. Cohen, supra,* 37 Cal.4th at p. 1063.) Another purpose is to "promote[] effective judicial proceedings" by encouraging full communication with the courts. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 322 [46 Cal.Rptr.3d 606, 139 P.3d 2].) To further these purposes, the privilege has been broadly applied. It is absolute and applies regardless of malice. (*Rusheen v. Cohen, supra,* at p. 1063; *Silberg v. Anderson, supra,* 50 Cal.3d at pp. 215–216; see also

*Ribas v. Clark* (1985) 38 Cal.3d 355, 364–365 [212 Cal.Rptr. 143, 696 P.2d 637]; *Albertson v. Raboff* (1956) 46 Cal.2d 375, 380–381 [295 P.2d 405].) Indeed, the privilege extends even to civil actions based on perjury. (*Rusheen v. Cohen, supra*, at p. 1058; *Kachig v. Boothe* (1971) 22 Cal.App.3d 626, 641 [99 Cal.Rptr. 393].) " 'The resulting lack of any really effective civil remedy against perjurers is simply part of the price that is paid for witnesses who are free from intimidation by the possibility of civil liability for what they say.' " (*Ribas v. Clark, supra*, at p. 365, quoting Prosser, Law of Torts (4th ed. 1971) p. 778.)

The February 21 letter fits squarely within this privilege. As the Court of Appeal explained, it "constituted a 'communication.' It was made in the context of a judicial proceeding, i.e., a pending case in Tehama County. Lloyd, who was the custodian of information relevant to the action, was a witness/participant. Finally, the letter furthered the objects of the litigation, since the information it conveyed had relevance to a family law visitation dispute." The Court of Appeal elaborated on this latter point: "One issue before the family law court was whether a judicially imposed restriction on Jacob having contact with Todd's sons should be lifted. The fact that Victim Witness, a county agency, had determined that Jacob molested his minor nephew B.B. was relevant to and connected with that issue and therefore the litigation."

■ We add that when a court must make very difficult and critical decisions regarding child visitation, it should receive the maximum amount of relevant information. Accordingly, "Case law is clear that section 47(b) absolutely protects litigants and other participants from being sued on the basis of communications they make in the context of family law proceedings." (*Wise v. Thrifty Payless, Inc.* (2000) 83 Cal.App.4th 1296, 1302 [100 Cal.Rptr.2d 437].) In *Obos v. Scripps Psychological Associates, Inc.* (1997) 59 Cal.App.4th 103, 107 [69 Cal.Rptr.2d 30], the court noted that "obviously informing the children's counsel and therapist of the allegations [regarding the mother's boyfriend], and inquiring as to their veracity, furthered the goal of ascertaining which custodial arrangement was in the children's best interests." Similarly, in this case, providing information regarding whether one of the persons considered for visitation rights had previously molested his nephew obviously furthered the goal of ascertaining which visitation arrangement was in the children's best interest. Consistent with the general policies behind the litigation privilege, public agencies like Victim Witness must be permitted to provide such information without fear of being harassed by derivative lawsuits.

■ Arguing against this conclusion, plaintiff notes, correctly, that the privilege protects only against *communicative* acts and not against *noncommunicative* acts. (E.g., *Ribas v. Clark, supra*, 38 Cal.3d at pp. 363–365

[privilege applies to testimony, which is communicative, but not to alleged earlier illegal eavesdropping, which is noncommunicative].) "Because the litigation privilege protects only publications and communications, a 'threshold issue in determining the applicability' of the privilege is whether the defendant's conduct was communicative or noncommunicative." (*Rusheen v. Cohen, supra,* 37 Cal.4th at p. 1058, quoting *Kimmel v. Goland* (1990) 51 Cal.3d 202, 211 [271 Cal.Rptr. 191, 793 P.2d 524].) However, "if the gravamen of the action is communicative, the litigation privilege extends to noncommunicative acts that are necessarily related to the communicative conduct . . . . Stated another way, unless it is demonstrated that an independent, noncommunicative, wrongful act was the gravamen of the action, the litigation privilege applies." (*Rusheen v. Cohen, supra,* at p. 1065.)

Plaintiff argues that, for these purposes, this action is based on the county's noncommunicative conduct "in accessing the data through the VOX system and disclosing it to the victim's mother." We disagree. Lloyd's conduct in accessing the VOX system, by itself, was noncommunicative, but that act (which plaintiff does not even contend was unlawful) is not the gravamen of the action. As the Court of Appeal explained, "the gravamen of Jacob's invasion of privacy claim was not Lloyd's noncommunicative conduct in accessing data through the VOX system and disclosing it to the victim's mother. The alleged injury stems from the *publication* of the information in a judicial proceeding, thereby exposing it to public view." Moreover, because "the cause of action is based on a communicative act, the litigation privilege extends to those noncommunicative actions which are necessarily related to that communicative act." (*Rusheen v. Cohen, supra,* 37 Cal.4th at p. 1052.)

Citing Welfare and Institutions Code section 827, plaintiff also argues that, because he was a juvenile at the time of the alleged molestation, the information obtained from the VOX system was confidential and could not be released without a prior court order. Thus, he continues, the letter broke confidentiality laws and, accordingly, is not privileged. The Court of Appeal expressed doubt that Lloyd broke any confidentiality laws. It explained: "Jacob relies exclusively on Welfare and Institutions Code section 827, which, in February 2003, shielded from public view any 'petition' filed in juvenile court or 'other documents filed in that case or made available to the probation officer in making his or her report, or to the judge, referee, or other hearing officer.' (§ 827, former subd. (a), as amended by Stats. 1999, ch. 996, § 1 [text in former subd. (a) redesignated as subd. (e)]; see also Historical and Statutory Notes, 73A West's Ann. Welf. & Inst. Code (2006 supp.) foll. § 827, p. 141.) However, because a juvenile court case was never opened as a result of the 1993 investigation, defendants do not appear to have violated the provisions of that section, and thus Jacob's argument is flawed at its inception." Citing *T.N.G. v. Superior Court* (1971) 4 Cal.3d 767 [94 Cal.Rptr. 813, 484 P.2d 981], plaintiff challenges the Court of Appeal's

conclusion that Welfare and Institutions Code section 827's application depends on the existence of a juvenile court proceeding. We need not resolve this question, for we agree with the Court of Appeal's primary conclusion that the litigation privilege protects the February 21 letter even if we assume that the disclosure violated juvenile record confidentially laws.

■ As noted, the cases describe the litigation privilege as absolute, regardless of malice, and extending even to perjury. But the cases also contain language that appears to make the privilege less than absolute. As stated in a representative case (the language is oft repeated) the privilege applies to a "publication required or *permitted by law* in the course of a judicial proceeding" and to a communication "by litigants or other participants *authorized by law*." (*Silberg v. Anderson, supra*, 50 Cal.3d at p. 212, italics added.) Plaintiff argues that, because the letter broke confidentiality laws, it was not permitted by law and Lloyd was not authorized by law to communicate the information to the court. The same sort of argument could be made regarding perjury. Obviously, perjury is not permitted by law. But the cases are clear that the litigation privilege extends to civil actions based on perjury. To resolve this question, we must closely examine what the terms "permitted by law" and "authorized by law" mean in this context.

This language appears to date back to the early decision of *Albertson v. Raboff, supra*, 46 Cal.2d 375. In that case, the plaintiff sued the defendant for alleged false representations made in a notice of lis pendens that the defendant had recorded in conjunction with an earlier legal action between the parties. We had to decide whether the litigation privilege extended to a recorded document that did not directly involve the courts. In holding that it did, we stressed section 47(b)'s *broad* reach. "It is our opinion that the privilege applies to any publication, such as the recordation of a notice of *lis pendens*, that is required [citation] or *permitted* [citation] *by law* in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is invoked. [Citation.] . . . If the publication has a reasonable relation to the action and is *permitted by law*, the absolute privilege attaches. [Citations.] It therefore attaches to the recordation of a notice of *lis pendens*, for *such a publication is permitted by law*, and like other documents that may be filed in an action, it has a reasonable relation thereto and it is immaterial that it is recorded with the county recorder instead of being filed with the county clerk." (*Albertson v. Raboff, supra*, at pp. 380–381, some italics added.)

It should be apparent that in *Albertson*, by using the term "permitted by law," we meant to *broaden* the privilege's reach beyond traditional limits by including any *category* of publication permitted by law. We did not suggest

that the *specific* publication must be permitted. This was the conclusion of a Court of Appeal decision that considered this question. "Appellants point to the language of *Albertson* v. *Raboff, supra*, 46 Cal.2d 375, at page 380, to the effect that the privilege applies to any publication that is 'permitted' by law, as inferentially denying the privilege to false documents. However, in the light of cases decided before and after *Albertson*, it is apparent that the court in that case intended the language used to apply merely to the category of evidence or documents. The court did not intend to require that the evidence or documents be accurate or truthful before the privilege attached. To hold otherwise would be inconsistent with the general public purpose of the privilege to encourage the utmost freedom of access to the courts and quasi-judicial bodies." (*Pettitt v. Levy* (1972) 28 Cal.App.3d 484, 489 [104 Cal.Rptr. 650], cited in *Silberg v. Anderson, supra*, 50 Cal.3d at p. 212.)

The result in *Albertson v. Raboff, supra*, 46 Cal.2d 375, itself demonstrates this point. A notice of lis pendens, as a category, is permitted by law and, hence, is privileged, even if a specific notice, being perjurious, might be considered not permitted by law. The same would be true of courtroom testimony, which obviously is a category permitted by law. One may readily acknowledge that perjured testimony is not permitted, but the privilege extends even to such testimony because testimony in general is permitted by law. Another example is found in *Rusheen v. Cohen, supra*, 37 Cal.4th 1048, where we held that the privilege extends to "filing allegedly false declarations of service to obtain a default judgment . . . ." (*Id.* at p. 1052.) Obviously, the law does not permit false declarations, but declarations of service to obtain a default judgment are a category of publication permitted by law. Hence, the litigation privilege protects all such declarations.

Thus, in this case, the question is whether the February 21 letter is a category of communication permitted by law. We conclude it is. The law permits a communication to the court relevant to a family law decision it must make. Accordingly, such a communication is privileged even if a specific communication might not be permitted by law because, for example, it was either perjurious or meant to be kept confidential. Just as the privilege extends to communications otherwise within section 47(b)'s reach that are perjurious, it also extends to communications otherwise within its reach that might be deemed confidential.

For these reasons, we agree with the trial court and the Court of Appeal that section 47(b)'s litigation privilege extends to the February 21 letter.

### B. *Whether the Litigation Privilege Applies to an Action Based on the Constitutional Right to Privacy*

Plaintiff also argues that even if the February 21 letter was privileged, the privilege does not apply to a cause of action based on California's constitutional right to privacy, which the voters added to the Constitution by an initiative in 1972. (Cal. Const., art. I, § 1; see *Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 15 [26 Cal.Rptr.2d 834, 865 P.2d 633] (*Hill*).)

█ We have repeatedly stated that the litigation privilege bars all tort causes of action except malicious prosecution. (E.g., *Rusheen v. Cohen, supra,* 37 Cal.4th at p. 1057; *Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 360 [7 Cal.Rptr.3d 803, 81 P.3d 244].) We have specifically stated that the privilege bars causes of action for invasion of privacy. (*Kimmel v. Goland, supra,* 51 Cal.3d at p. 209; *Silberg v. Anderson, supra,* 50 Cal.3d at p. 215; *Ribas v. Clark, supra,* 38 Cal.3d at p. 365.) In *Ribas v. Clark,* we quoted Prosser's explanation of why the privilege extends even to civil actions based on perjury (see pt. II.A., *ante*), then stated, "This policy is equally compelling in the context of common law and statutory claims for invasion of privacy; there is no valid basis for distinguishing between the two." (38 Cal.3d at p. 365.)

The question here is whether we should distinguish between common law and statutory claims for invasion of privacy and a claim based on the state Constitution. Although we have stated in seemingly absolute terms that the "only exception to application of section 47(2) [now 47(b)] to tort suits has been for malicious prosecution actions" (*Silberg v. Anderson, supra,* 50 Cal.3d at p. 216), we have never specifically stated that the privilege bars an action based on the constitutional right to privacy. Indeed, in *Heller v. Norcal Mutual Ins. Co.* (1994) 8 Cal.4th 30, 44 [32 Cal.Rptr.2d 200, 876 P.2d 999], we recognized but did not decide "plaintiff's claim that a constitutional invasion of privacy defeats application of the litigation privilege."

Two Court of Appeal decisions have concluded that the litigation privilege must yield to the constitutional right of privacy. (*Jeffrey H. v. Imai, Tadlock & Keeney* (2000) 85 Cal.App.4th 345, 355–361 [101 Cal.Rptr.2d 916]; *Cutter v. Brownbridge* (1986) 183 Cal.App.3d 836, 844–847 [228 Cal.Rptr. 545].) They held that which interest prevails—the constitutional right to privacy or the litigation privilege—must be decided on a case-by-case basis. As summarized in the more recent case, "the application of the litigation privilege in this constitutional context calls for a balancing of interests, despite the unqualified application of the privilege in other legal contexts." (*Jeffrey H. v. Imai, Tadlock & Keeney, supra,* at p. 355.) The main argument in favor of

this conclusion is that the litigation privilege, being merely a statutory creation, must yield to the constitutional right to privacy.

The Court of Appeal in *Wise v. Thrifty Payless, Inc.*, *supra*, 83 Cal.App.4th at pages 1302–1303 and footnote 1, disagreed with *Cutter v. Brownbridge*, *supra*, 183 Cal.App.3d 836, and the Court of Appeal in this case disagreed with both *Cutter v. Brownbridge*, *supra*, 183 Cal.App.3d 836, and *Jeffrey H. v. Imai, Tadlock & Keeney*, *supra*, 85 Cal.App.4th 345. The *Wise* court and the Court of Appeal here concluded that the litigation privilege bars a privacy cause of action based on the Constitution as well as one based on common law or statute.

We conclude that the litigation privilege applies even to a constitutionally based privacy cause of action. Obviously, if section 47(b) conflicted with California Constitution, article I, section 1, the statute would have to yield to the Constitution. The absolute privilege of section 47(b) would be unconstitutional and hence invalid to the extent of the conflict. But the statutory and constitutional provisions are not in conflict; they can and do coexist. The litigation privilege has existed "[f]or well over a century," and "[a]t least since then—Justice Traynor's opinion in *Albertson* v. *Raboff* (1956) 46 Cal.2d 375 [295 P.2d 405], California courts have given the privilege an expansive reach." (*Rubin v. Green* (1993) 4 Cal.4th 1187, 1193–1194 [17 Cal.Rptr.2d 828, 847 P.2d 1044].) The parties have not cited, and we are not aware of, anything in the ballot materials or history of the 1972 initiative that added the constitutional right to privacy that suggested any intent to limit the scope of this preexisting privilege or to create a right of privacy that would prevail over the privilege. Rather, as we explain, we believe the constitutional right contains within it a limitation previously based on statute. When the voters adopted California Constitution, article I, section 1, they did so mindful of the preexisting litigation privilege.

The constitutional right to privacy has never been absolute; it is subject to a balancing of interests. In *Hill*, we considered the nature of the constitutional right to privacy. We explained, "Privacy concerns are not absolute; they must be balanced against *other important interests*. [Citations.] . . . [¶] The diverse and somewhat amorphous character of the privacy right necessarily requires that privacy interests be specifically identified and carefully compared with competing or countervailing privacy and nonprivacy interests in a 'balancing test.' The comparison and balancing of diverse interests is central to the privacy jurisprudence *of both common and constitutional law*. [¶] Invasion of a privacy interest is not a violation of the state constitutional right to privacy if the invasion is justified by a competing interest." (*Hill, supra*, 7 Cal.4th at pp. 37–38, italics added.) These "other important interests" need not be constitutionally based. Even nonconstitutional interests can outweigh constitutional privacy interests. (*Id.* at pp. 43–44,

57–58 [interests in sporting integrity and health and safety of athletes permits invasion of privacy].) Among the competing interests against which the privacy right must be balanced is the longstanding litigation privilege.

The courts in *Jeffrey H. v. Imai, Tadlock & Keeney, supra,* 85 Cal.App.4th 345, and *Cutter v. Brownbridge, supra,* 183 Cal.App.3d 836, interpreted our opinion in *Hill* as requiring a balancing of the litigation privilege and the constitutional right of privacy on a case-by-case basis. We disagree. In adopting the litigation privilege, the *Legislature* has already done the balancing. The litigation privilege furthers "the vital public policy of affording free access to the courts and facilitating the crucial functions of the finder of fact." (*Ribas v. Clark, supra,* 38 Cal.3d at pp. 364–365; see also the cases cited in pt. II.A., *ante.*) This policy exists even if a privacy cause of action invokes the Constitution, and not on a case-by-case basis but in all cases. Litigants and witnesses could never be free of "fear of being harassed subsequently by derivative tort actions" (*Rusheen v. Cohen, supra,* 37 Cal.4th at p. 1063) if the privilege applied only in some cases but not others. This policy caused us to conclude that the litigation privilege bars all common law and statutory causes of action for invasion of privacy. (*Ribas v. Clark, supra,* at p. 365.) It applies equally to a constitutionally based cause of action for invasion of privacy. The same compelling need to afford free access to the courts exists whatever label is given to a privacy cause of action. Indeed, as the Court of Appeal noted here, "recognition of such a distinction would allow a plaintiff to easily overcome the privilege on any privacy claim by simply inserting the adjective 'constitutional' into his or her pleadings and jury instructions."

■ "If the policies underlying section 47(b) are sufficiently strong to support an absolute privilege, the resulting immunity should not evaporate merely because the plaintiff discovers a conveniently different label for pleading what is in substance an identical grievance arising from identical conduct as that protected by section 47(b)." (*Rubin v. Green, supra,* 4 Cal.4th at p. 1203.) Section 47(b)'s litigation privilege bars a privacy cause of action whether labeled as based on common law, statute, or Constitution. We disapprove of *Jeffrey H. v. Imai, Tadlock & Keeney, supra,* 85 Cal.App.4th 345, and *Cutter v. Brownbridge, supra,* 183 Cal.App.3d 836, to the extent they are inconsistent with this opinion.

### III. Conclusion

We affirm the judgment of the Court of Appeal.

George, C. J., Baxter, J., Werdegar, J., Moreno, J., and Corrigan, J., concurred.

**KENNARD, J.,** Concurring.—I join the majority's holding on the scope of the litigation privilege set out in Civil Code section 47, subdivision (b). Specifically, I agree that the litigation privilege, which applies to communications made in connection with any "judicial proceeding," applies here to a letter that the supervisor of Shasta County's victim witness program wrote to a Tehama County Superior Court judge who was to decide whether to allow contact between three children and their stepfather's brother, Jacob. B. The letter pertained to an investigation in Shasta County some years earlier of Jacob B.'s sexual molestation of the stepfather's then five-year-old son. By rendering such communications privileged and thus not subject to later derivative tort actions, the litigation privilege ensures " 'utmost freedom of communication between citizens and public authorities whose responsibility is to investigate and remedy wrongdoing' " and constitutes " 'a fundamental adjunct to the right of access' " to the courts. (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 213 [266 Cal.Rptr. 638, 786 P.2d 365]; see also *Flatley v. Mauro* (2006) 39 Cal.4th 299, 321–322 [46 Cal.Rptr.3d 606, 139 P.3d 2].)

I also agree that the litigation privilege cuts off derivative tort actions for invasion of privacy when pled under our state Constitution's article I, section 1. This is the first time this court has addressed that issue. The issue first arose 13 years ago in *Heller v. Norcal Mutual Ins. Co.* (1994) 8 Cal.4th 30, 44 [32 Cal.Rptr.2d 200, 876 P.2d 999] (*Heller*). But after the majority there concluded that the plaintiff had not adequately pled a cause of action for invasion of privacy under the state Constitution (*id.* at p. 43), it refrained from deciding the applicability of the litigation privilege to such a claim properly pled.

I wrote separately in *Heller*. Unlike the majority, I would have allowed the plaintiff in *Heller* to pursue her cause of action under the state constitutional right of privacy. (*Heller*, *supra*, 8 Cal.4th at p. 56 (conc. & dis. opn. of Kennard, J.).) I simply observed that "the litigation privilege does not bar a constitutional right of action . . . ." (*Ibid.*)

Now that the issue has been squarely presented in this case, and upon further reflection, I am of the view that California Constitution's article I, section 1, cannot be invoked to bar application of the litigation privilege to a claim for invasion of privacy.

The California Constitution is "the supreme law of the state" to which all statutes must conform. (*Carter v. Seaboard Finance Co.* (1949) 33 Cal.2d 564, 579 [203 P.2d 758].) Therefore, "[a] statute inconsistent with the California Constitution is, of course, void." (*Hotel Employees & Restaurant Employees Internat. Union v. Davis* (1999) 21 Cal.4th 585, 602 [88 Cal.Rptr.2d 56, 981 P.2d 990]; see also *People v. Navarro* (1972) 7 Cal.3d 248, 260 [102

Cal.Rptr. 137, 497 P.2d 481] ["Wherever statutes conflict with constitutional provisions, the latter must prevail."].) More particularly, a statute that broadly and directly impinges on the right of privacy guaranteed by the state Constitution is void unless supported by a compelling governmental interest that cannot be achieved by less restrictive means. (*American Academy of Pediatrics v. Lungren* (1997) 16 Cal.4th 307, 348 [66 Cal.Rptr.2d 210, 940 P.2d 797] (lead opn. of George, C. J.).)

Because a statute is subordinate to, and must be in conformity with, the state Constitution, a statutory privilege cannot of its own force defeat a right of action that is required or guaranteed by the state Constitution. In determining the scope of the constitutional privacy right, however, and whether that right exists in a particular situation, a court may consider traditional statutory privileges. I agree with the majority that the privacy right guaranteed by the state Constitution does not extend to situations covered by the litigation privilege.