Filed 4/22/15  Riley v. Usher CA1/5
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| RICHARD JOHN RILEY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ULRIC E.J. USHER et al., <br><br> Defendants and Appellants. | A140490 <br><br> (San Francisco County <br> Super. Ct. No. CGC-13-531667) |

Plaintiff Richard *John* Riley brought this lawsuit for damages, alleging a money judgment against Richard *Robert* Riley was erroneously levied on plaintiff's bank account.  Defendants—the judgment creditor and her attorney—appeal the denial of their motion to strike under the anti-SLAPP statute (Code Civ. Proc., § 425.16),[1] arguing plaintiff's causes of action arise from protected activity and are barred by the litigation privilege (Civ. Code, § 47, subd. (b)).  We reverse in part and remand.

BACKGROUND

In 2008, defendant Patricia Hamilton, represented by her attorney, defendant Ulric E.J. Usher (collectively, defendants), obtained a money judgment against Richard Robert Riley, an individual, and Richard Robert Riley dba R&D Construction, in a construction defect lawsuit (the construction lawsuit).  In 2012, defendants obtained a writ of execution in the construction lawsuit for approximately $35,000.  In May 2012, defendants sent the writ of execution to the San Francisco Sheriff's Department, along

---

[1] All undesignated section references are to the Code of Civil Procedure.

1

with written instructions directing the sheriff to levy the writ on plaintiff's bank account.[2] Approximately $35,000 was seized from plaintiff's account and the sheriff's department disbursed the money to defendants in June 2012.

Plaintiff apparently did not realize the money had been taken until December 2012. He then contacted defendants and informed them he was not the judgment debtor. Defendants did not return the money taken from plaintiff's account.[3]

Plaintiff subsequently filed the instant lawsuit alleging abuse of process, conversion, fraud, and negligence.[4] The operative first amended complaint (complaint) includes the general allegations that, "[i]nstead of locating and executing the judgment on the correct Defendant RICHARD **ROBERT** RILEY, [defendants] wrongfully and negligently executed on the wrong party, PLAINTIFF RICHARD **JOHN** RILEY's bank account." The complaint also alleges plaintiff "demanded Defendants return of the monies illegally taken from him, over more than five occasions, and Defendants have failed to return the funds to Plaintiff, and are wrongfully holding the funds belonging to Plaintiff."

In the cause of action for abuse of process, the complaint alleges defendants "misused the NOTICE OF LEVY and WRIT OF EXECUTION collection processes on a judgment debtor by attempting to collect a debt against a non-party person who is not the judgment debtor . . . ." The cause of action for conversion alleges defendants "converted [plaintiff's] property . . . in order to 'unlawfully collect' on a judgment, which was a process never intended by the Notice of Levy or Writ of Execution," and further alleges that plaintiff "demanded the immediate return of the monies unlawfully taken by

[2] Sheriffs are levying officers. (§ 680.260.)

[3] The parties dispute the admissibility of certain letters from defendants proposing an installment plan to repay the amount levied, which were excluded by the trial court. We need not decide whether the letters were admissible as they are not relevant to our resolution of this appeal.

[4] The lawsuit also named plaintiff's bank as a defendant. The claims against the bank are not at issue in this appeal.

2

Defendants, but defendant[s] failed and refuse[d] to return the property to plaintiff." The cause of action for fraud alleges defendants "falsely and fraudulently represented to [plaintiff's bank] that Plaintiff owed . . . a judgment sum in excess of $35,000." The cause of action for negligence alleges defendants "negligently investigated in searching for the correct person and caused to be prepared a NOTICE OF LEVY and WRIT OF EXECUTION against the incorrect person."

Defendants filed an anti-SLAPP motion, arguing their conduct in enforcing the construction lawsuit judgment was protected activity and the litigation privilege barred all of plaintiff's claims. The trial court denied defendants' motion on the ground that "the gravamen of Plaintiff's complaint arises out of the wrongful withholding of money by Defendants, and therefore does not arise from a protected activity." The trial court also found defendants' motion frivolous and awarded plaintiff attorney's fees. This appeal followed.

## DISCUSSION

The anti-SLAPP statute "allows a court to strike any cause of action that arises from the defendant's exercise of his or her constitutionally protected rights of free speech or petition for redress of grievances." (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 311–312 (*Flatley*).) "In evaluating an anti-SLAPP motion, the trial court first determines whether the defendant has made a threshold showing that the challenged cause of action arises from protected activity." (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1056 (*Rusheen*).) "If the court finds the defendant has made the threshold showing, it determines then whether the plaintiff has demonstrated a probability of prevailing on the claim." (*Ibid.*) This requires the plaintiff to demonstrate " ' "that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." ' " (*Ibid.*) We review the trial court's order denying the anti-SLAPP motion de novo. (*Flatley, supra,* at p. 325.)

I. *Protected Activity*

Plaintiff argues the conduct alleged is not protected under the anti-SLAPP statute because (1) the gravamen of the causes of action is not protected activity, and (2) defendants' alleged conduct is illegal.[5]

A. *The Gravamen of the Causes of Action*

Protected activity under the anti-SLAPP statute includes "any written or oral statement or writing made in connection with an issue under consideration or review by a . . . judicial body . . . ." (§ 425.16, subd. (e)(2).) The notice of levy and defendants' written instructions to the sheriff plainly fall within this category as writings made in connection with the construction lawsuit. This conduct is therefore protected activity under the anti-SLAPP statute. (Cf. *La Jolla Group II v. Bruce* (2012) 211 Cal.App.4th 461, 471 [recording of lis pendens "constituted a written statement made in connection with issues under consideration in a judicial proceeding—that is, the underlying quiet title action" and is therefore protected activity under § 425.16].)

However, the trial court found, and plaintiff argues, the gravamen of the causes of action is defendants' refusal to return the funds after plaintiff notified them the levied property was not the judgment debtor's, rather than their conduct in connection with the levy itself. "Where, as here, a cause of action is based on both protected activity and unprotected activity, it is subject to section 425.16 ' "unless the protected conduct is 'merely incidental' to the unprotected conduct." ' " (*Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1551.) "For purposes of anti-SLAPP analysis, . . . an alleged act is incidental to a claim, and incidental to any unprotected activity on which the claim is based, only if the act is not alleged to be the

---

[5] Plaintiff also argues the litigation privilege does not protect defendants' communications in connection with the levy. We discuss the application of the litigation privilege below, in connection with the second step of the SLAPP analysis. Although at times courts have "looked to the litigation privilege as an aid" in determining whether conduct is protected under the first step of the anti-SLAPP analysis (*Flatley, supra,* 39 Cal.4th at p. 323), "the two statutes are not substantively the same" and do not "serve the same purposes" (*id.* at pp. 323–324).

4

basis for liability." (*Wallace v. McCubbin* (2011) 196 Cal.App.4th 1169, 1183 (*Wallace*).) All four causes of action against defendants allege the levy as one—if not the sole—action providing the basis for liability. Therefore, the protected activity is not "merely incidental" to the nonprotected activity.

B. *Illegal Activity*

Plaintiff also argues the conduct alleged is not protected activity because it is illegal. In *Flatley*, the Supreme Court held that if "either the defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal as a matter of law," the activity is not protected by the anti-SLAPP statute. (*Flatley, supra,* 39 Cal.4th at p. 320.) "[T]he Supreme Court's use of the phrase 'illegal' was intended to mean criminal, and not merely violative of a statute." (*Mendoza v. ADP Screening and Selection Services, Inc.* (2010) 182 Cal.App.4th 1644, 1654.)

Plaintiff contends the levy constituted the crimes of theft (Pen. Code § 484) and identity theft (Pen. Code § 530.5). Defendants do not concede they committed theft or identity theft. The evidence does not conclusively establish either crime, as defendants submitted a declaration stating their investigation led them to reasonably conclude plaintiff was the judgment debtor in the construction lawsuit and asserting plaintiff is in fact the judgment debtor. The exception in *Flatley* does not apply.

II. *Probability of Prevailing*

"[W]here a cause of action arises from both protected activity and unprotected activity, the plaintiff may satisfy its obligation in the second prong by simply showing a probability of prevailing on any part of the cause of action." (*Wallace, supra,* 196 Cal.App.4th at p. 1212.)[6] Defendants contend plaintiff has failed to demonstrate a probability of prevailing because the litigation privilege bars his claims.

---

[6] Although the trial court did not reach the second prong of the anti-SLAPP analysis, the parties have fully briefed the issue and we exercise our discretion to decide it. (*Wallace, supra,* 196 Cal.App.4th at p. 1195 ["we have discretion to decide the [second SLAPP step] issue ourselves, since it is subject to independent review"].)

The litigation privilege immunizes certain communications from tort liability, with the exception of malicious prosecution.  (*Rusheen, supra,* 37 Cal.4th at p. 1057.)  " '[I]t applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved.  [Citations.]  [¶] The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action.  [Citations.]'  [Citation.]  Thus, 'communications with "some relation" to judicial proceedings' are 'absolutely immune from tort liability' by the litigation privilege [citation].  It is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards."  (*Ibid.*)

"Because the litigation privilege protects only publications and communications, a 'threshold issue in determining the applicability' of the privilege is whether the defendant's conduct was communicative or noncommunicative.  [Citation.]  The distinction between communicative and noncommunicative conduct hinges on the gravamen of the action.  [Citations.]  That is, the key in determining whether the privilege applies is whether the injury allegedly resulted from an act that was communicative in its essential nature."  (*Rusheen, supra,* 37 Cal.4th at p. 1058.)

*Rusheen* involved a lawsuit alleging the defendant filed false proofs of service, took a default judgment without proper notice, and executed the improper default judgment.  (*Rusheen, supra,* 37 Cal.4th at p. 1054.)  The plaintiff argued "the wrongful act of levying on property in execution of judgment is a noncommunicative act in its 'essential nature' and is thus unprivileged."  (*Id.* at p. 1061.)  The California Supreme Court declined to decide this issue, concluding, "even if levying on property involves a noncommunicative physical act" (*ibid.*), the "gravamen of the action was not the levying act, but the procurement of the judgment based on the use of allegedly perjured declarations of service."  (*Id.* at p. 1062.)  The court held that "where the cause of action is based on a communicative act, the litigation privilege extends to those

6

noncommunicative actions which are necessarily related to that communicative act," including postjudgment enforcement efforts. (*Id.* at p. 1052.)

While not deciding whether a levy itself is a communicative or noncommunicative act, the Supreme Court in *Rusheen* noted, "even the execution and levying process may also involve communications such as the delivery of the writ and statements or representations made to the levying officer or other party." (*Rusheen, supra,* 37 Cal.4th at p. 1061, fn. 3.) One court of appeal has subsequently held a tort claim alleging wrongful conduct in the levying process was barred by the litigation privilege. In *Tom Jones Enterprises, Ltd. v. County of Los Angeles* (2013) 212 Cal.App.4th 1283 (*Tom Jones*), the judgment debtor was the trustee of a family trust. (*Id.* at p. 1287.) The plaintiffs instructed the sheriff's department to levy the writ of execution on deposit accounts in the name of the judgment debtor. (*Ibid.*) The sheriff apparently seized the assets in deposit accounts owned by the judgment debtor individually, as well as in her capacity as a trustee. (*Ibid.*) The plaintiffs instructed the sheriff's department to release any of the judgment debtor's individual property; the sheriff's department instead released all of her property, including that held in her capacity as trustee. (*Id.* at pp. 1287–1288.) The plaintiffs filed a negligence lawsuit against the sheriff's department "for causing the release of funds subject to a writ of execution contrary to the instructions of plaintiffs." (*Id.* at p. 1286.) The court of appeal held the "[p]laintiffs' negligence claim based on the instructions given to the bank by a Sheriff's Department employee is barred by the litigation privilege." (*Id.* at p. 1294.) The court explained, "the gravamen of the action—the issuance of written instructions by the Sheriff's Department (presumably to the bank) to fully release the funds—was a communicative act. The litigation privilege even 'extends' to what may be considered a noncommunicative act— the act of releasing the funds." (*Id.* at p. 1296.) Another case, cited with approval in *Rusheen*, similarly found conduct in connection with an allegedly improper bank account levy was protected by the litigation privilege. (*O'Keefe v. Kompa* (2000) 84 Cal.App.4th 130, 134–135 (*O'Keefe*).)

Plaintiff's complaint seeks to impose liability for the misuse of the notice of levy, which was issued pursuant to defendants' written instructions to the sheriff's department. Both the notice of levy and the instructions are indisputably communicative acts. They also satisfy the other requirements of the litigation privilege: " 'any [communication] required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved." (*Rusheen, supra,* 37 Cal.4th at p. 1057.) Instructions to a levying officer and a notice of levy are both required by law.[7] (§ 687.010, subd. (a) ["The judgment creditor shall give the levying officer instructions in writing."]; § 700.010, subd. (a) [levying officer "shall serve . . . notice of levy" on judgment debtor].) That the communications took place after the judgment issued does not preclude application of the litigation privilege, which "is not limited to statements made during a trial or other proceedings, but may extend to steps taken prior thereto, or afterwards." (*Rusheen, supra,* at p. 1057.) Communications taken to levy a writ of execution are made to achieve the objects of the litigation, as "enforcement of a judgment (in this case by way of levy) is simply the object of any civil action for damages." (*Id.* at p. 1062; see also *Brown v. Kennard* (2001) 94 Cal.App.4th 40, 49–50 (*Brown*) ["judgment enforcement efforts, as an extension of a judicial proceeding and related to a litigation objective, are considered to be within the litigation privilege"].) As the litigation privilege immunizes defendants' levy instructions to the sheriff and the notice of levy, it extends to the subsequent levying act which was "necessarily related to" these communications. (*Rusheen, supra,* at p. 1052.)

The litigation privilege does not apply, however, to the separate alleged wrongful conduct of withholding the property after being informed by plaintiff it was not the

---

[7] Plaintiff argues defendants' communications in connection with the levy were not permissible because they targeted the property of plaintiff, who was not a party to the construction lawsuit. This does not remove them from the scope of the litigation privilege, which "includ[es] any *category* of publication permitted by law," regardless of whether "the *specific* publication" is permitted. (*Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948, 958–959.)

judgment debtor's property. This act—withholding the property—was noncommunicative, and therefore not protected by the litigation privilege. (*Rusheen, supra,* 37 Cal.4th at p. 1058.) Moreover, unlike the levy itself, the withholding was not "necessarily related to" the sheriff's instructions and notice of levy, as any wrongfully levied funds could be returned upon demand.

Accordingly, we must determine whether plaintiff has shown a probability of prevailing on any cause of action with respect to the wrongful withholding. We have little difficulty concluding that plaintiff has satisfied this burden as to the conversion cause of action. "The basic elements of the tort are (1) the plaintiff's ownership or right to possession of personal property; (2) the defendant's disposition of the property in a manner that is inconsistent with the plaintiff's property rights; and (3) resulting damages." (*Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 119.) "A conversion can occur when a willful failure to return property deprives the owner of possession." (*Fearon v. Department of Corrections* (1984) 162 Cal.App.3d 1254, 1257.) Plaintiff has submitted a declaration that he is not the judgment debtor and that defendants willfully failed to return his property.

Plaintiff's other causes of action cannot support liability based solely on the wrongful withholding. "The common law tort of abuse of process arises when one uses the court's process for a purpose other than that for which the process was designed." (*Rusheen, supra,* 37 Cal.4th at p. 1056.) While conduct related to the levy involved a use of judicial process, defendants' post-levy refusal to return plaintiff's funds did not involve a use of court process. Plaintiff's claims for fraud and negligence are based solely on defendants' conduct in connection with the levy. The complaint makes no allegations of fraud or negligence in connection with the wrongful withholding.

Accordingly, we conclude plaintiff has established a probability of prevailing only with respect to his claim for conversion. All other claims must be stricken.

III. *Attorney Fees*

Defendants appeal the trial court's award of attorney fees to plaintiff on the ground that the anti-SLAPP motion was frivolous (§ 425.16, subd. (c)(1)). Because we

conclude the anti-SLAPP motion was partially meritorious, we reverse this fee award. We also deny plaintiff's motion for sanctions for filing a frivolous appeal.

Defendants request an award of attorney fees for work performed in the trial court and on appeal as a prevailing defendant pursuant to section 425.16, subdivision (c)(1), which provides, with exceptions not relevant here, "a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs." As partially successful defendants, they are "entitled to recover attorney fees and costs incurred in moving to strike the claims on which they prevailed, but not fees and costs incurred in moving to strike the remaining claims." (*ComputerXpress, Inc. v. Jackson* (2001) 93 Cal.App.4th 993, 1020.) We will remand to the trial court for a determination of the appropriate amount of the award.

## DISPOSITION

The order denying the anti-SLAPP motion is vacated and the trial court is directed to enter a new order granting the motion with respect to the first, third, and fourth causes of action, and denying the motion with respect to the second cause of action. Defendants are entitled to fees and costs incurred in moving to strike the claims on which they prevailed both in the trial court and on appeal. The trial court should determine the amount.

_____

SIMONS, J.

We concur.

_____

JONES, P.J.

_____

BRUINIERS, J.