[No. H030097. Sixth Dist. Apr. 30, 2007.]

SUHASINI RAMALINGAM, Plaintiff and Appellant, v.
MICHAEL THOMPSON et al., Defendants and Respondents.

**Counsel**

McManis Faulkner & Morgan, James McManis, Michael Reedy and Christine Peek for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Bruce L. Shaffer, Claudia J. Robinson and James A. Willis for Defendants and Respondents.

**Opinion**

**BAMATTRE-MANOUKIAN, Acting P. J.—**

## I. INTRODUCTION

In the underlying marital dissolution action, appellant Suhasini Ramalingam and her husband A.N. Narayanswami jointly retained a neutral accountant, respondent Michael Thompson, to aid resolution of their community property and support issues. During the March 2000 trial on property issues, Thompson testified that only 5,871 of the 55,136 shares of Johnson & Johnson stock acquired by Narayanswami were community property. Based in part on Thompson's testimony, the trial court ruled that all community shares of

Johnson & Johnson stock had been sold during the marriage to pay commu-.nity expenses. Ramalingam appealed and we affirmed the trial court's ruling. (*In re Marriage of Narayanswami* (Mar. 18, 2002, H021786) [nonpub. opn.] (*Narayanswami*).)

Following the adverse outcome of her appeal, Ramalingam filed a legal malpractice action against the attorney who had represented her in the marital dissolution action. She subsequently amended the complaint to add a cause of action for accounting malpractice against Thompson and his accounting firm, Greco, Felice & Thompson (hereafter, defendants or Thompson). Defendants moved for summary judgment and the trial court granted the motion, finding that the accounting malpractice claim was barred by the absolute litigation privilege set forth in Civil Code section 47, subdivision (b)(2) (hereafter section 47(b)(2))[1] as well as quasi-judicial immunity. Judgment was entered in defendants' favor.

On appeal, Ramalingam contends that the judgment should be reversed because the trial court erred in finding that Thompson was immunized from suit as a matter of law. For reasons that we will explain, we find that the accounting malpractice action is barred by the affirmative defense of the section 47(b)(2) litigation privilege and therefore we will affirm the judgment.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  *The Underlying Marital Dissolution Action*

Ramalingam[2] and Narayanswami were married in 1983. Their daughter, Joyti, was born in 1992.[3] In 1996, the couple separated and Ramalingam filed a petition for dissolution. To assist them in their resolution of the community property and support issues that arose during the marital dissolution action, Ramalingam and Narayanswami retained a certified public accountant. They executed a "Stipulation Appointing Certified Public Accountant" that was entered as an order of the court on April 4, 1997.

The stipulation and order appointed the accounting firm of McCahan, Helfrick et al. to "act in the capacity as neutral accountants for the parties herein" and to perform the following services: "A. [D]etermine the nature and

---

[1] All further statutory references are to the Civil Code unless otherwise indicated.

Civil Code section 47, subdivision (b)(2) provides in pertinent part, "A privileged publication or broadcast is one made: [¶] . . . [¶] (b) In any . . . (2) judicial proceeding . . . ."

[2] During the marital dissolution proceedings, Ramalingam was known by the name Suhasini Narayanswami.

[3] We take judicial notice of our decision in the underlying marital dissolution action (*Narayanswami, supra*, H021786) and have drawn some background facts from that decision.

extent of the community property of the parties; [¶] B. [D]etermine the value of the community property, as necessary; [¶] C. Prepare an accounting and/or tracing of the assets from date of separation; [¶] D. Analyze the sale of the community business, accounting for all proceeds past, present and future; [¶] E. Trace and account for premarital assets claimed by either party; and, determine the extent of the community property interest in such property, if, in fact, the community has any interest in such property; [¶] F. Recommend a plan for the equal division of community assets, taking into consideration the tax basis of any property divided (such as stocks, bonds, etc.) and the tax effect of the division; [¶] G. Analyze the income and other relevant factors to assist in the determination of the spousal and child support and to determine if family support is appropriate in this matter." The stipulation further provided that the accountant's services were to be paid for with community funds.

In August 1997, the parties terminated the services of the McCahan, Helfrick firm and retained Thompson as their joint accounting expert. The record reflects that Thompson provided his opinions regarding the parties' property issues in correspondence, in deposition, and at trial. For example, a letter of October 13, 1999, from Thompson to Ramalingam's attorney addressed the Johnson & Johnson shares and Ramalingam's individual retirement accounts. In his deposition of February 11, 2000, Thompson testified, among other things, that 5,871 Johnson & Johnson shares were community property, and 49,265 Johnson & Johnson shares were Narayanswami's separate property. At the trial on property issues held on March 13, 2000, Thompson testified that the 5,871 shares of Johnson & Johnson stock earned during the marriage were sold during the marriage.

On May 25, 2000, following the trial on property issues, the trial court entered its findings after hearing and partial judgment. The trial court found that it was undisputed that 5,871 Johnson & Johnson shares were received during marriage. Based in part on Thompson's testimony, the court further found that all 5,871 community shares of Johnson & Johnson stock had been disposed of during the marriage because the shares were used to pay community expenses. Consequently, the trial court also determined that the 21,632 shares of Johnson & Johnson stock remaining at the time of separation were Narayanswami's separate property.

Ramalingam appealed the order declaring the remaining 21,632 shares of Johnson & Johnson stock to be Narayanswami's separate property. We affirmed the trial court's order, finding that substantial evidence supported the court's finding that the 5,871 shares of Johnson & Johnson stock earned during the marriage were used during the marriage to pay community expenses. We noted that "it was always undisputed, and indeed, supported by

records, that only 5,871 shares of stock were earned during the marriage."
(*Narayanswami, supra,* H021786.) We also observed that Narayanswami's
testimony that the proceeds of his sales of Johnson & Johnson shares during
the marriage were used to pay for community expenses was uncontradicted.

### B.   *The Malpractice Action*

On July 29, 2002, Ramalingam filed a legal malpractice action against the
attorney who had represented her in the underlying marital dissolution action.
She alleged that the attorney had failed to exercise the skill and care required
of a family law specialist with respect to the stock held by Ramalingam and
Narayanswami by, among other things, "failing to properly prepare the joint
accounting expert retained by the parties to the dissolution action, and failing
to assure that the joint expert obtained and analyzed sufficient information to
formulate an accurate and well-founded opinion for presentation to the court,
and allowing the joint expert to testify at a contested hearing relying on
information which was provided by and favored [Narayanswami], all to
[Ramalingam's] detriment." Ramalingam further alleged that the attorney's
negligence caused her to lose a community interest in stock worth at least
$1.5 million and to engage in an appeal of the May 25, 2000, trial court
order.

On October 31, 2002, Ramalingam filed a first amended complaint for
damages that included a cause of action for accounting malpractice against
Thompson. Ramalingam alleged that Thompson's accounting services were
deficient and he had failed to follow generally accepted accounting practices
in several respects. Among other things, she asserted that Thompson had
based his opinion that only 5,871 shares of Johnson & Johnson stock were
community property upon the oral statements of Narayanswami, had failed to
review documentation regarding the status or ownership of the Johnson &
Johnson stock, and had failed to analyze what was done with the proceeds
of each sale of Johnson & Johnson sale during the marriage. Absent
Thompson's negligence, Ramalingam contended, she would have obtained a
community interest of $1.5 million in the Johnson & Johnson stock and
would not have had to appeal the trial court's order of May 25, 2000.

Ramalingam settled her claim against the attorney in September 2005 and
he was subsequently dismissed from the action after receiving an order
determining the settlement to be in good faith.

### C.   *The Motion for Summary Judgment*

Defendants filed a motion for summary judgment on September 23, 2005,
asserting that the undisputed facts showed that Ramalingam's accounting

malpractice action was precluded as a matter of law by three affirmative defenses: (1) the section 47(b)(2) litigation privilege; (2) quasi-judicial immunity; and (3) the statute of limitations (Code Civ. Proc., § 339, subd. 1).

Because it was undisputed that Thompson was a jointly retained neutral expert and his opinions were provided for the sole purpose of resolving a marital dissolution action, defendants argued that the section 47(b)(2) litigation privilege barred Ramalingam's claim. Defendants emphasized decisions holding that the litigation privilege immunized a jointly retained psychologist from suits by the parties to a marital dissolution action, citing *Howard v. Drapkin* (1990) 222 Cal.App.3d 843 [271 Cal.Rptr. 893] (*Howard*) and *Gootee v. Lightner* (1990) 224 Cal.App.3d 587 [274 Cal.Rptr. 697] (*Gootee*).

Defendants also relied on the decision in *Howard*, *supra*, 222 Cal.App.3d 843, for their contention that quasi-judicial immunity barred Ramalingam's claim of accounting malpractice, because in that case the appellate court determined that a jointly retained psychologist who mediated a child custody dispute should have the same immunity as other neutrals, such as judges, commissioners and referees, who attempt to resolve disputes.

Finally, defendants asserted that Ramalingam's claim was barred by the two-year statute of limitations applicable to accounting malpractice claims (Code Civ. Proc., § 339, subd. 1). According to defendants, it was undisputed that Ramalingam had sufficient knowledge of Thompson's alleged wrongful acts to allege a claim of accounting malpractice by May 25, 2000, when the trial court ruled against her with respect to the Johnson & Johnson shares, and therefore her complaint was untimely filed more than two years later on July 29, 2002.

Ramalingam opposed the motion for summary judgment, arguing that none of defendants' three affirmative defenses had merit. First, Ramalingam claimed that the section 47(b)(2) litigation privilege did not apply to Thompson because she was suing him on the basis of his noncommunicative conduct, consisting of his failure to provide ordinary care in his accounting services (specifically, his failure to obtain the correct vesting schedule for the stock shares from Johnson & Johnson). Ramalingam emphasized that the section 47(b)(2) privilege applies only to statements or publications.

Second, Ramalingam contended that Thompson's role as a joint accountant did not immunize him from suit because he did not engage in dispute resolution, unlike the jointly retained psychologists in *Howard*, *supra*, 222 Cal.App.3d 843, and *Gootee*, *supra*, 224 Cal.App.3d 587.

Finally, Ramalingam maintained that her complaint was timely filed in July 2002, well within the two-year limitations period set forth in Code of Civil

Procedure section 339, subdivision 1, because she was not aware that Thompson made any significant mistakes until March 2002, when she reviewed our decision in *Narayanswami, supra*, H021786.

### D. *The Trial Court's Order*

The trial court issued its order granting Thompson's motion for summary judgment on February 10, 2006. The order states that the motion was granted because "defendants' undisputed facts establish as a matter of law that plaintiff's claim for accounting malpractice is barred by the absolute litigation privilege under [section] 47(b)(2) and/or the quasi-judicial immunity and plaintiff has failed to raise a triable issue of material fact as to defendants' showing."

The trial court expressly found that Ramalingam sought to "establish liability based on Thompson's statements, findings, recommendations and/or testimony as a joint or neutral accounting expert in the underlying dissolution proceeding." Further, the court determined that the exception to the litigation privilege allowing a party to sue its own witness, as stated in *Mattco Forge, Inc. v. Arthur Young & Co.* (1992) 5 Cal.App.4th 392 [6 Cal.Rptr.2d 781] (*Mattco Forge*), was inapplicable because the undisputed facts established that Thompson was acting as a joint or neutral expert.[4]

Judgment in Thompson's favor was entered on March 15, 2006. Ramalingam timely filed a notice of appeal.[5]

## III. DISCUSSION

### A. *The Standard of Review*

The standard of review for an order granting or denying summary adjudication is de novo. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860 [107 Cal.Rptr.2d 841, 24 P.3d 493] (*Aguilar*).) The trial court's stated reasons for granting summary adjudication are not binding on the reviewing court, which reviews the trial court's ruling, not its rationale. (*Kids' Universe v. In2Labs* (2002) 95 Cal.App.4th 870, 878 [116 Cal.Rptr.2d 158].)

In performing our independent review, we follow the instruction of the California Supreme Court regarding summary judgment. A defendant moving

---

[4] The order did not address Thompson's statute of limitations defense, and we assume the trial court did not find it necessary to reach that issue.

[5] We granted the application of the California Society of Certified Public Accountants to file an amicus curiae brief in support of Thompson. Ramalingam filed an answer to the amicus curiae brief.

for summary judgment has the initial burden of showing that a cause of action lacks merit because one or more elements of the cause of action cannot be established or there is a complete defense to that cause of action. (Code Civ. Proc., § 437c, subd. (*o*); *Aguilar, supra*, 25 Cal.4th at p. 850.) If the defendant fails to make this initial showing, it is unnecessary to examine the plaintiff's opposing evidence and the motion must be denied. However, if the moving papers make a prima facie showing that justifies a judgment in the defendant's favor, the burden shifts to the plaintiff to make a prima facie showing of the existence of a triable issue of material fact. (§ 437c, subd. (p)(2); *Aguilar*, 25 Cal.4th at p. 849; *Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1002–1003 [4 Cal.Rptr.3d 103, 75 P.3d 30].)

In determining whether the parties have met their respective burdens, the court must "consider all of the evidence" and "all of the inferences reasonably drawn therefrom," and "must view such evidence [citations] and such inferences [citations], in the light most favorable to the opposing party." (*Aguilar, supra*, 25 Cal.4th at pp. 844–845.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar*, 25 Cal.4th at p. 850, fn. omitted.)

Therefore, in the present case we will independently determine whether defendants met their initial burden of establishing a complete defense to Ramalingam's claim of accounting malpractice. Our analysis begins with a discussion of the section 47(b)(2) litigation privilege, which Thompson has asserted as a complete defense.

### B. *The Section 47(b)(2) Litigation Privilege*

■ Section 47(b)(2) provides in pertinent part, "A privileged publication or broadcast is one made: [¶] . . . [¶] (b) In any . . . (2) judicial proceeding . . . ." The California Supreme Court has established the parameters of the litigation privilege: "[T]he section 47(b) privilege operates as a *limitation on liability*, precluding use of the protected communications and statements as the basis for a tort action other than for malicious prosecution. [Citations.] Thus, section 47(b) creates what in many other contexts is termed an 'immunity' from suit." (*Moore v. Conliffe* (1994) 7 Cal.4th 634, 638, fn. 1 [29 Cal.Rptr.2d 152, 871 P.2d 204] [discussing former § 47, subd. (b), now § 47(b)(2)].)

"To effectuate its vital purposes, the litigation privilege is held to be absolute in nature." (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 215 [266

Cal.Rptr. 638, 786 P.2d 365] (*Silberg*) [discussing former § 47, subd. 2, now § 47(b)(2)].) The principal purpose of the litigation privilege is to " "to afford litigants and witnesses [citation] the utmost freedom of access to the courts without fear of being harassed subsequently by derivative tort actions. [Citations.]' " (*Moore v. Conliffe, supra*, 7 Cal.4th at p. 642, quoting *Silberg, supra*, 50 Cal.3d at p. 213.)

■ Thus, " '[s]ince the "external threat of liability is destructive of this fundamental right and inconsistent with the effective administration of justice" [citation], courts have applied the privilege to eliminate the threat of liability for communications made during all kinds of truth-seeking proceedings: judicial, quasi-judicial, legislative and other official proceedings.' [Citation.]" (*Moore v. Conliffe, supra*, 7 Cal.4th at p. 642.) The California Supreme Court recently affirmed the application of the privilege in family law cases: " 'Case law is clear that section 47(b) absolutely protects litigants and other participants from being sued on the basis of communications that they make in the context of family law proceedings.' [Citation.]" (*Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948, 956 [56 Cal.Rptr.3d 477, 154 P.3d 1003].)

■ The litigation privilege is broadly applied (*Silberg, supra*, 50 Cal.3d at p. 211) and doubts are resolved in favor of the privilege (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 913 [120 Cal.Rptr.2d 576]). Our Supreme Court has established a four-part test for application of the litigation privilege: " 'The usual formulation is that the privilege applies to any communication (1) *made in judicial or quasi-judicial proceedings*; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that [has] some connection or logical relation to the action. [Citations.]' " (*Moore v. Conliffe, supra*, 7 Cal.4th at p. 641, quoting *Silberg, supra*, 50 Cal.3d at p. 212.)

Applying the four-part test for application of the litigation privilege, our Supreme Court in *Silberg* determined that the attorney who represented the wife in a marital dissolution action was immune from suit by the husband. (*Silberg, supra*, 50 Cal.3d at p. 220.) The husband sought to hold his wife's attorney liable for retaining a psychologist who was biased to serve as the parties' purportedly neutral psychologist for child custody issues. The court in *Silberg* determined that the attorney's statements regarding the psychologist's suitability were made in the course of the marital dissolution proceeding, by an authorized participant in order to achieve the object of the litigation, and were reasonably related to the proceeding. (*Silberg, supra*, 50 Cal.3d at pp. 219–220.)

The litigation privilege has also been held to provide a complete defense where a party to a marital dissolution action has filed a tort action against a

jointly retained expert. In *Gootee,* the parties to a marital dissolution action stipulated that a psychologist, Marshall Lightner, would be retained to provide a child custody evaluation. (*Gootee, supra,* 224 Cal.App.4th at p. 589.) Lightner prepared a report and subsequently testified, recommending that the mother have physical custody. The father sued Lightner for professional negligence, alleging that he had been negligent in administering and interpreting tests and had destroyed raw test data. (*Gootee, supra,* 224 Cal.App.3d at pp. 589–590.) The trial court granted Lightner's motion for summary judgment on the basis of the litigation privilege. (*Id.* at p. 589.)

■ The appellate court in *Gootee* affirmed the judgment, stating that "[f]reedom of access to the courts and encouragement of witnesses to testify truthfully will be harmed if neutral experts must fear retaliatory lawsuits from litigants whose disagreement with an expert's opinions perforce convinces them the expert must have been negligent in forming such opinions." (*Gootee, supra,* 224 Cal.App.3d at p. 593.) The court also rejected the father's contention that the litigation privilege did not apply because the psychologist's allegedly negligent conduct was independent of his testimony. "[T]he protective mantle of the privilege embraces not only the courtroom testimony of witnesses, but also protects prior preparatory activity leading to the witnesses' testimony." (*Id.* at p. 594; see also *Laborde v. Aronson* (2001) 92 Cal.App.4th 459, 463 [112 Cal.Rptr.2d 119] [following *Gootee*].)

Similarly, the appellate court in *Howard, supra,* 222 Cal.App.3d at page 848, held that the litigation privilege protected a jointly retained psychologist who provided a family evaluation report in a marital dissolution action and was subsequently sued by the wife. In that case, the trial court sustained the defendant psychologist's demurrer without leave to amend. The appellate court upheld the ruling on the ground that the *Silberg* four-part test for application of the litigation privilege was satisfied because the psychologist was an authorized participant in the dissolution action, her communications were obviously related to custody and visitation issues, and her "acts were part of a process undertaken by the husband and wife to aid the court in its decision on an important matter in the dissolution." (*Howard,* at pp. 863–864.)

However, where a party brought an accounting malpractice action against its own allegedly negligent experts, it was held that the litigation privilege did not apply. (*Mattco Forge, supra,* 5 Cal.App.4th at p. 395.) The appellate court distinguished the decisions in *Gootee, supra,* 224 Cal.App.3d 587, and *Howard, supra,* 222 Cal.App.3d 843, on the ground that those decisions involved a party suing "an expert witness hired jointly by adverse parties as a neutral, dispute-resolving participant." (*Mattco Forge, supra,* 5 Cal.App.4th at p. 403.) The *Mattco Forge* court explained, "the litigation privilege does not exist to protect one's own expert witness, but to protect adverse witnesses from suit by opposing parties after the lawsuit ends." (*Id.* at p. 405.)

Having reviewed the section 47(b)(2) litigation privilege, we turn to the application of the privilege to Ramalingam's accounting malpractice action against Thompson, the accounting expert jointly retained in the underlying marital dissolution action.

### C. *The Section 47(b)(2) Litigation Privilege Bars Ramalingam's Claim*

Ramalingam's chief argument on appeal is that the section 47(b)(2) litigation privilege does not apply to her accounting malpractice claim against Thompson because her claim arises from noncommunicative conduct, rather than testimony or statements.

According to Ramalingam, the gravamen of her claim is Thompson's noncommunicative conduct in using the wrong vesting schedule for the Johnson & Johnson shares, which resulted in a severe miscalculation of the community interest in those shares. She claims that Thompson applied a three-year vesting schedule to the Johnson & Johnson shares received by Narayanswami as employment compensation and the Johnson & Johnson stock options, although the stock options actually had a six-year vesting schedule. Ramalingam further asserts that Thompson failed to contact Johnson & Johnson regarding the employee stock program and instead wrongfully relied upon oral representations by Narayanswami. In Ramalingam's words, "she was injured by noncommunicative conduct, including the failure to review the appropriate documents, analyze expenses versus income, trace sales of the stocks, or analyze what was done with the proceeds of the stock sales."

Additionally, Ramalingam argues that the section 47(b)(2) litigation privilege does not apply here because, unlike the defendant experts in *Gootee, supra*, 224 Cal.App.3d 587, and *Howard, supra*, 222 Cal.App.3d 843, Thompson was not hired to resolve any disputes or to provide recommendations to the court. Instead, Ramalingam contends, Thompson was retained only to provide accounting services on items that were not in dispute.

Thompson disagrees. He points out that while he was retained to analyze the property issues presented in the underlying marital dissolution action, his analysis was done for the purpose of communicating his recommendations to the parties, which he did in letters as well as during his testimony in deposition and at trial. Thompson further contends that had he "analyzed the status of the Johnson & Johnson stock and told no one about his conclusions, no damage would have occurred to [Ramalingam]." Therefore, Thompson asserts that it is the communication of his recommendations in the marital dissolution action that caused the damage allegedly sustained by Ramalingam, and her claim is barred by the section 47(b)(2) litigation privilege.

The California Supreme Court addressed the communication element of the litigation privilege in *Rusheen v. Cohen* (2006) 37 Cal.4th 1048 [39 Cal.Rptr.3d 516, 128 P.3d 713] (*Rusheen*) (discussing former § 47, subd. (b), now § 47(b)(2)). "Because the litigation privilege protects only publications and communications, a 'threshold issue in determining the applicability' of the privilege is whether the defendant's conduct was communicative or noncommunicative." (*Rusheen, supra,* 37 Cal.4th at p. 1058, quoting *Kimmel v. Goland* (1990) 51 Cal.3d 202, 211 [271 Cal.Rptr. 191, 793 P.2d 524].) "The distinction between communicative and noncommunicative conduct hinges on the gravamen of the action. [Citations.] That is, the key in determining whether the privilege applies is whether the injury allegedly resulted from an act that was communicative in its essential nature. [Citations.]" (*Rusheen, supra,* 37 Cal.4th at p. 1058.)

Additionally, "[i]f the gravamen of the action is communicative, the litigation privilege extends to noncommunicative acts that are necessarily related to the communicative conduct . . . . [Citations.]" (*Rusheen, supra,* 37 Cal.4th at p. 1065; see *Jacob B. v. County of Shasta, supra,* 40 Cal.4th at p. 957.) To show that the litigation privilege does not apply, the plaintiff must demonstrate that "an independent, noncommunicative, wrongful act was the gravamen of the action . . . ." (*Rusheen, supra,* 37 Cal.4th at p. 1065.)

Thus, in *Kimmel v. Goland, supra,* 51 Cal.3d at page 212, the California Supreme Court ruled that a cross-complaint based on the defendants' illegal recording of telephone conversations was not barred by the litigation privilege, because that conduct was noncommunicative. Similarly, the litigation privilege was held not to apply to a claim against a physician who allegedly injured the plaintiff while performing a workers' compensation examination on behalf of the plaintiff's employer. (*Mero v. Sadoff* (1995) 31 Cal.App.4th 1466, 1480 [37 Cal.Rptr.2d 769].) The appellate court reasoned that the plaintiff was seeking damages for injuries resulting from the defendant's noncommunicative conduct. (*Ibid.*) On the other hand, where the plaintiffs' claim arose from the counterclaims filed by the defendant in a federal action, the appellate court held the claim was barred by the litigation privilege because pleadings are generally viewed as privileged communications. (*Navellier v. Sletten* (2003) 106 Cal.App.4th 763, 770–771 [131 Cal.Rptr.2d 201].)

In the present case, we are not convinced that the gravamen of Ramalingam's claim against Thompson is noncommunicative conduct. It is undisputed that Thompson was jointly retained by the parties to the underlying marital dissolution action to act as a neutral accounting expert for property issues. After the trial court ruled on the basis of Thompson's trial testimony that only 5,871 shares of Johnson & Johnson stock were community property,

and these shares had been sold during the marriage to pay community expenses, Ramalingam sued Thompson for accounting malpractice. She alleged that Thompson's work fell below the standard of care because, among other things, he based "an opinion that only 5,871 shares of Johnson & Johnson stock were community property upon the oral statements of [Narayanswami] without any supporting documentation."

Thus, as Thompson correctly emphasizes, it was his communication of his opinion regarding the community property interest in the Johnson & Johnson stock that allegedly caused Ramalingam's damages. The gravamen of Ramalingam's claim is therefore Thompson's communicative conduct. Moreover, Ramalingam does not dispute that her claim against Thompson otherwise satisfies the *Silberg* four-part test for application of the section 47(b)(2) litigation privilege.

We therefore determine that Ramalingam's claim against Thompson for accounting malpractice is barred as a matter of law by the section 47(b)(2) litigation privilege. The fact that Ramalingam alleges that Thompson was negligent in his investigation and preparation of his opinions regarding the Johnson & Johnson stock does not alter our conclusion. As we have discussed, it is well established that where the gravamen of a complaint is communicative conduct, the litigation privilege necessarily protects related noncommunicative conduct (*Rusheen, supra,* 37 Cal.4th at p. 1052), including activities done in preparation for testifying (*Gootee, supra,* 224 Cal.App.3d at pp. 594–595). Thus, Johnson's allegedly negligent investigation of the status of the Johnson & Johnson stock in preparation for testifying at the trial on property issues is also protected by the section 47(b)(2) litigation privilege.

We are also not convinced by Ramalingam's contention that the litigation privilege is inapplicable unless the neutral expert was retained to resolve disputes or make recommendations to the court, like the defendant psychologists in *Gootee, supra,* 224 Cal.App.3d 587, and *Howard, supra,* 222 Cal.App.3d 843. The four-part test for application of the litigation privilege, established by the California Supreme Court in *Silberg, supra,* 50 Cal.3d at page 212, does not include a dispute resolution requirement. Moreover, as stated in *Silberg,* the privilege applies broadly "to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved." (*Ibid.*)

For these reasons, we conclude that Ramalingam's claim against Thompson for accounting malpractice is barred as a matter of law by the section 47(b)(2) litigation privilege, and the trial court properly granted

summary judgment in Thompson's favor. Having reached this conclusion, we need not address Ramalingam's arguments concerning the affirmative defenses of quasi-judicial immunity and the statute of limitations.

## IV. DISPOSITION

The judgment is affirmed. Respondents are awarded their costs on appeal.

Mihara, J., and Duffy, J., concurred.

A petition for a rehearing was denied May 29, 2007, and the opinion was modified to read as printed above.