Filed 6/5/26  P. v. Silver Bird Auto Leasing CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA EX REL. HEATH & YUEN, APC,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>SILVER BIRD AUTO LEASING, LLC et al.,<br><br>    Defendants and Respondents. | B342847<br><br>(Los Angeles County Super. Ct. No. 21STCV36715) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Kerry Bensinger, Judge.  Affirmed.

Heath & Yuen, Stephen B. Heath, Steven W. Yuen, and Joshua G. Wong, for Plaintiff and Appellant.

Worthington Law, Brian P. Worthington, for Defendants and Respondents.

————————————

Appellant Heath & Yuen, APC defended a van driver and related parties in an auto collision suit.  The law firm then brought this action against those who pressed the auto collision suit as litigants and lawyers, namely respondents Silver Bird Auto Leasing, LLC, the X-Law Group, PC, and Filippo Marchino.  According to the law firm, respondents violated the Insurance Frauds Prevention Act (IFPA) by defrauding its clients' insurers.  (Ins. Code, § 1871 et seq.)  IFPA "allows qui tam plaintiffs to file lawsuits on the government's behalf and seek monetary penalties against perpetrators of insurance fraud."  (*People ex rel. State Farm Mutual Automobile Ins. Co. v. Rubin* (2021) 72 Cal.App.5th 753, 760–761; Ins. Code, § 1871.7, subd. (e).)  The California Insurance Guarantee Association (CIGA), which ultimately paid to settle the underlying auto collision suit on behalf of the driver and his insolvent insurance company, did not "condone or authorize" this IFPA action and disclaims being defrauded.  Heath & Yuen nevertheless persisted.  The trial court granted summary judgment to respondents because their alleged misrepresentations were immaterial.  We affirm.

## BACKGROUND

### 1. *Underlying Litigation*

The underlying suit arose from a December 2017 slow-speed collision in Beverly Hills between a McLaren luxury sports car, driven by Marchino, and a tour van.  As the McLaren attempted a U-turn, the two vehicles collided.  Silver Bird, as owner of the McLaren, filed a complaint in early 2018 for negligence against the tour company, its owner, and the van's driver.  The complaint sought damages for the McLaren's repair, loss of use, and diminution in value.  According to the complaint, Marchino had made "a legal turn" prior to the collision.

2

Discovery purportedly revealed several things about the collision: (1) Marchino's U-turn occurred, as can be seen in a post-collision photograph, over a certain configuration of double yellow lines, (2) the brightly colored McLaren may have been stationary at impact, and (3) the tour van driver may have been distracted immediately before the collision.

Eagan Avenatti LLP represented Silver Bird when it first filed this suit. Two-and-a-half years later, X-Law and Marchino took over Silver Bird's representation. Defendants' insurer, Gateway, retained Heath & Yuen to represent the defendants. After Gateway became insolvent, CIGA took over the defense. Ultimately, the case settled in early 2021 with a $25,000 payment to Silver Bird.

### 2. *The IFPA Complaint*

After settlement, Heath & Yuen filed a verified complaint against respondents — Silver Bird, X-Law, and Marchino — alleging a violation of IFPA. Heath & Yuen alleged a single IFPA cause of action premised on three acts in the underlying litigation: First, the allegation in the underlying complaint that the McLaren "was making a legal turn" when the turn was actually an unlawful U-turn over double yellow lines, making Marchino "solely at fault" for the collision. Second, the production of a fraudulent repair bill for the McLaren during discovery. And third, the failure to disclose in discovery Marchino's GEICO insurance and its payment of repairs for the McLaren.

The complaint asserts these three acts violated IFPA because they violated Penal Code section 550. (See Ins. Code, § 1871.7, subd. (b) ["Every person who violates any provision of this section or Section 549, 550, or 551 of the Penal Code shall be

3

subject, in addition to any other penalties that may be prescribed by law, to a civil penalty . . . ."].) (Further unspecified statutory references are to the Penal Code.)

### 3. *Summary Judgment Motion*

Respondents moved for summary judgment on the grounds that no triable issues of material fact existed as to whether they had violated section 550, the necessary predicate of Heath & Yuen's IFPA cause of action. Respondents raised several arguments; we recount those still relevant on appeal.

First, respondents argued the allegation about the legality of the McLaren's turn could not have been materially fraudulent given the van driver's comparative fault and its status as a mere allegation in a complaint. They provided evidence of the former and a declaration from CIGA, which paid to settle the suit, as to the latter. CIGA had always considered Marchino at fault for the collision and did not view Silver Bird's claims to be fraudulent.

Second, respondents argued they did not produce a materially fraudulent repair bill, but rather a legitimate estimate. The motion addressed the theory of fraud Heath & Yuen had alleged in its complaint — that the repair bill was false because the repair company had not produced it in response to Heath & Yuen's subpoena for documents tied to the McLaren. Respondents produced a declaration from the repair company explaining why it had not produced the document — it was not tied to the McLaren's vehicle identification number (VIN) — and asserting the document's legitimacy. The document showed an unapproved estimate for approximately $7,000 to add a "clear bra" to the McLaren. Respondents' motion also urged the repair document could not have been material because it was an estimate, not a bill, and Silver Bird had withdrawn its claim for

4

repair work damages before settling. Corroborating this was a declaration from Silver Bird's counsel describing multiple occasions in 2019 and 2020 when he made Heath & Yuen aware of the revised damages claim. Also corroborating was the CIGA declaration stating CIGA was aware of Marchino's GEICO insurance, which covered the repairs to the McLaren, and that Silver Bird had withdrawn its claim for repairs but was continuing to pursue damages for loss of use and diminution in value.

Third, respondents argued there was no unlawful concealment of Marchino's GEICO insurance during the prior litigation. They asserted Silver Bird had no duty to disclose Marchino's insurance, any alleged discovery abuse related to the nondisclosure of insurance should have been dealt with in the underlying suit by a motion to compel, and Heath & Yuen knew GEICO was the driver's insurer during the underlying case in any event. As was relevant with the repair estimate, after GEICO paid for repairs to the McLaren as Marchino's insurer, Silver Bird withdrew its claim for those damages prior to settling.

The CIGA declaration disclosed its view that the settlement of the auto collision suit was proper, in part, because a jury could have still awarded loss of use or diminution in value damages based on the van driver's comparative fault. CIGA was unaware of Heath & Yuen's intention to file an IFPA suit based on the prior litigation, and "CIGA did not condone or authorize" it.

### 4. *Summary Judgment Opposition*

In opposition, Heath & Yuen asserted there were violations of section 550, subdivision (b)(1) and (2), sufficient to maintain the IFPA claim.

5

The firm emphasized evidence it believed showed that respondent's asserted statements were false instead of meaningfully addressing questions of materiality. The firm, for instance, argued respondents had not satisfied their initial summary judgment burden because they had not established the McLaren's turn was legal, the repair estimate was legitimate, and GEICO had paid only for repair costs.

The firm also submitted evidence it asserted created a material dispute of fact regarding falsity. Regarding the legality of the turn, the firm presented the post-collision photograph and testimony from the van driver to urge the McLaren's U-turn was illegal and the van driver was not distracted at the time of the collision. Regarding the estimate, the firm presented discovery responses in which Silver Bird suggested it regained use of the McLaren a week before the date of the challenged repair estimate. It further included its own copy of the repair estimate from the prior suit, which bore a different addressee, Silver Bird, compared to the version of the estimate supporting respondents' summary judgment motion, which was addressed to Marchino. And the firm also presented a preliminary estimate from a different repair company for repairs authorized on the McLaren, which included, among nearly $70,000 in 46 listed services, the same "clear bra" service as the purportedly fraudulent estimate. Regarding GEICO, the firm offered Silver Bird's prior discovery responses that *it* had no insurance and argued this was a misrepresentation. The firm also offered, seemingly against its interest, a picture it acquired in the prior suit of Marchino's insurance card showing GEICO was Marchino's insurer.

Heath & Yuen concluded its opposition with a request for a continuance to depose a GEICO representative and gather

further items of discovery. Respondents filed a reply and objected to the requested continuance.

### 5. *Trial Court's Rulings*

Though we lack a transcript of the summary judgment hearing, we know the trial court denied a continuance and granted summary judgment for respondents.

The trial court summarized section 550, subdivision (b)(1) and (2), the provisions Heath & Yuen had relied upon in opposing summary judgment, and addressed the parties' showings as to them. The trial court concluded that section 550 required the alleged fraud to be material and that materiality was lacking.

The allegedly false claim about the legality of the McLaren's U-turn was immaterial because "CIGA presumed Marchino was at fault" in the underlying litigation. Heath & Yuen, in response, had not presented evidence, like a declaration from an insurance agent, employee, or expert, demonstrating an insurer would find such an allegation in an unverified complaint material. The court concluded there was no evidence that absent the statement of legality "CIGA would not have paid out on the claim or would have paid a different amount." Meanwhile, the production of an allegedly fraudulent invoice in the prior suit was immaterial because Silver Bird had withdrawn a claim for repair damages before settlement. The trial court did not address the alleged concealment of Marchino's insurer, GEICO.

Heath & Yuen later moved for reconsideration, which the trial court denied.

Heath & Yuen timely appealed from the grant of summary judgment. On appeal, Heath & Yuen has not challenged the denial of a continuance or its motion for reconsideration. We accordingly do not consider evidence the firm included with its

7

reconsideration motion or attached in opposition to respondents' later-filed, still-pending attorney fees motion, including additional testimony and documents from GEICO. (See *Bailey v. San Francisco District Attorney's Office* (2024) 16 Cal.5th 611, 620 [limiting review to the factual record before the trial court when it ruled].) Heath & Yuen cites these materials in its appellate briefing without acknowledging they were not part of the original summary judgment record. This burdened respondents and the court with parsing out what evidence was relevant on appeal, and it repeated what the trial court had termed "scattershot" briefing. This tactic was improper.

## DISCUSSION

### I. Summary Judgment and Scope of Review

A "motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) "[T]he party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Ibid.*, fn. omitted.) A party "shall not rely upon the allegations or denials

8

of its pleadings to show that a triable issue of material fact exists." (Code Civ. Proc., § 437c, subd. (p)(2).)

We review de novo a grant of summary judgment. (*County of Los Angeles v. Quinn Emanuel Urquhart & Sullivan, LLP* (2025) 115 Cal.App.5th 489, 504.) While we are limited to "the facts from the record that was before the trial court when it ruled on that motion" (*Bailey v. San Francisco District Attorney's Office, supra*, 16 Cal.5th at p. 620), we are not bound by the trial court's rationale (*Ramalingam v. Thompson* (2007) 151 Cal.App.4th 491, 498).

" '[O]ur review is [further] governed by a fundamental principle of appellate procedure, namely, that " '[a] judgment or order of the lower court is presumed correct,' " and thus, " 'error must be affirmatively shown.' " [Citation.] Under this principle, [the nonmoving] plaintiff bears the burden of establishing error on appeal, even though [the moving] defendant[ ] had the burden of proving [its] right to summary judgment before the trial court. [Citation.] For this reason, our review is limited to contentions adequately raised and supported in plaintiff's brief.' " (*Hodges v. Cedars-Sinai Medical Center* (2023) 91 Cal.App.5th 894, 904.) Waiting to raise arguments against summary judgment in an appellate reply brief is insufficient. (*Bitner v. Department of Corrections & Rehabilitation* (2023) 87 Cal.App.5th 1048, 1065, fn. 3.) Further, a "party cannot avoid summary judgment by relying on theories not alleged in the pleadings or argued to the trial court." (*Holman v. County of Butte* (2025) 111 Cal.App.5th 177, 189; see *Jacobs v. Coldwell Banker Residential Brokerage Co.* (2017) 14 Cal.App.5th 438, 443–446.)

Opposing summary judgment below, Heath & Yuen expressly argued violations of section 550, subdivision (b)(1) and

9

(2), supported its IFPA cause of action. It did not cite to any portion of subdivision (a) or to subdivision (b)(3). The trial court accordingly never addressed those provisions. But in its appellate briefing, the firm has raised subdivisions (a)(2) and (b)(3).

Subdivision (a)(2), which penalizes the presentation of claims for the same loss to multiple insurers, does not appear in Heath & Yuen's IFPA complaint. And the firm's invocation of that subdivision is only under a heading in the opening brief that raises an argument regarding the post-ruling evidence. Since unpled theories cannot defeat summary judgment and we assess only the evidence presented at the time of the motion, we do not consider any potential claim under subdivision (a)(2).

Subdivision (b)(3), which penalizes concealing events that affect insurance payments, does appear in Heath & Yuen's complaint and in the firm's opening brief on appeal. But the firm did not cite the provision in its summary judgment opposition. While that opposition referenced concealment generally speaking, the argument it made is not the one Heath & Yuen made in its complaint or now makes on appeal. That is, the summary judgment opposition argued respondents concealed details of *what* the GEICO payment may have covered whereas the firm's appellate brief, like its complaint, contends respondents concealed GEICO's existence and payment entirely — i.e., *whether* it paid anything. Heath & Yuen thus failed to develop its present concealment claim under subdivision (b)(3) before the trial court and deprived the trial court of an opportunity to rule on such an issue. We deem this a forfeiture. (See *Bitner v. Department of Corrections & Rehabilitation*, *supra*, 87 Cal.App.5th at p. 1065 ["Having failed to raise or develop this

10

issue in the trial court, plaintiffs cannot raise the issue for the first time on appeal"]; *Christina C. v. County of Orange* (2013) 220 Cal.App.4th 1371, 1383 [" 'The principles of "theory of the trial" apply to . . . summary judgment motions' "]; *Meridian Financial Services, Inc. v. Phan* (2021) 67 Cal.App.5th 657, 684 [" ' "[A]lthough we use a de novo standard of review here, we do not transform into a trial court" ' "].)  But even if not forfeited, we, like respondents, address the pleaded subdivision (b)(3) claim and conclude, below, that it lacks merit.

At oral argument, after receiving this court's tentative ruling in favor of respondents, Heath & Yuen tardily invoked section 550, subdivision (a)(1).  We do not consider that subdivision any further.  (*Dalessandro v. Mitchell* (2019) 43 Cal.App.5th 1088, 1091, fn. 4.)

## II.    No IFPA Violation

We ultimately agree with the trial court that summary judgment for respondents was appropriate because the alleged misrepresentations were not materially fraudulent.

### A. *Section 550 and Materiality*

Under section 550, "It is unlawful to do, or to knowingly assist or conspire with any person to do, any of the following:  [¶] (1) Present or cause to be presented any written or oral statement as part of, or in support of or opposition to, a claim for payment or other benefit pursuant to an insurance policy, *knowing that the statement contains any false or misleading information concerning any material fact.*  [¶] (2) Prepare or make any written or oral statement that is intended to be presented to any insurer or any insurance claimant in connection with, or in support of or opposition to, any claim or payment or other benefit pursuant to an insurance policy, *knowing that the statement contains any*

11

*false or misleading information concerning any material fact.* [¶] (3) Conceal, or knowingly fail to disclose the occurrence of, *an event that affects any person's initial or continued right or entitlement* to any insurance benefit or payment, or the amount of any benefit or payment to which the person is entitled." (§ 550, subd. (b)(1)–(3), italics added.)

Proof of insurance fraud under section 550, subdivision (b)(1) through (3) requires a showing of materiality. The requirement is expressly stated in subdivision (b)(1) and (2). While subdivision (b)(3) does not use the word "material," it nonetheless requires materiality. A concealment or nondisclosure is actionable under subdivision (b)(3) only if it "affects any person's" right to insurance benefits. "Affect" means "to produce an effect upon (someone or something)," "to act on and cause a change in (someone or something)," or "to influence (someone or something)." (Merriam-Webster Dict. Online (2026) <https://www.merriam-webster.com/dictionary/affect> [as of June 1, 2026].) With both fraud "concerning any material fact" and fraudulent concealment that "affects any person's . . . right or entitlement" to insurance payments, the conduct at issue must be impactful — that is, material. (§ 550, subd. (b)(1)–(3).) Others have linked subdivision (b)(1)–(3) in this fashion. (See *State ex rel. Wilson v. Superior Court* (2014) 227 Cal.App.4th 579, 594, 600 [describing subdivision (b)(3) as addressing the concealment of "material information"].) Heath & Yuen offers no convincing reason to make immaterial omissions actionable.

"[F]alse statements to obtain insurance benefits" are material "if the statements convey information on subjects which are 'germane' or 'reasonably relevant' to the insurer's investigation a*nd which could bear directly and importantly on*

12

*the investigation and evaluation* of the bona fides of the claim." (*People v. Gillard* (1997) 57 Cal.App.4th 136, 152 (*Gillard*), italics added.) "[T]he materiality of a statement is not determined by the actual effect the statement had on the outcome of the investigation"; instead, it " 'is determined by its prospective reasonable relevance to the insurer's inquiry.' " (*Id.* at p. 151.) " '[I]f the misrepresentation concerns a subject reasonably relevant to the insured's investigation, and if a reasonable insurer would attach importance to the fact misrepresented, then it is material.' " (*Ibid.*, quoting *Cummings v. Fire Ins. Exchange* (1988) 202 Cal.App.3d 1407, 1416–1417, italics omitted.) The standard includes "a finding the statement had the capacity to affect the decisionmaking process." (*Gillard*, *supra*, at p. 152.)

In similar contexts, courts have concluded " ' "[a] fact is material if there is a substantial likelihood that, under all the circumstances, a reasonable [professional] would consider it important in reaching a[] [professional] decision." ' " (*People v. Butler* (2012) 212 Cal.App.4th 404, 421; see also *People v. Kim* (2024) 99 Cal.App.5th 857, 865.) "The question of materiality, it is universally agreed, is an objective one, involving the significance of an omitted or misrepresented fact to a reasonable [professional]." (*TSC Industries, Inc. v. Northway, Inc.* (1976) 426 U.S. 438, 445; see also *People v. Easley* (1983) 34 Cal.3d 858, 871 [a material omission is one that "would have altered a reasonable magistrate's probable cause determination"].)

Applying these principles, we now turn to the alleged section 550 violations.

### B. *"Legal" Turn*

We start with Heath & Yuen's assertion that respondents violated section 550 because the underlying complaint falsely

alleged the McLaren was "making a legal turn" at the time of the collision.

Moving for summary judgment on this asserted violation, respondents submitted the complaint with the challenged statement. The complaint was neither signed nor verified by any of the respondents but rather was authored by a lawyer at a non-party law firm. Respondents presented two expert opinions suggesting the tour van driver's fault for the accident. The experts concluded that regardless of the U-turn's legality, the McLaren was stationary and visible, due to its bright orange paint, and the van driver had time to stop to avoid the car but did not due to distracted driving. Finally, respondents submitted the declaration from CIGA's adjustor, who testified that despite awareness of Silver Bird's claim that Marchino made a three-point U-turn and the van driver was at fault, "CIGA disputed the merits of Silver Bird's claim" and instead asserted the turn's illegality and its being the accident's cause. CIGA believed "Marchino was fully at fault for the accident" but settled, in part, because "there remained a potential that Silver Bird could establish some liability as to [the underlying] Defendants on the basis of comparative fault, a potential factual issue that could not be eliminated entirely." Though CIGA disputed Silver Bird's entitlement to relief and its view of the auto collision suit, "CIGA did not view Silver Bird's claims to be fraudulent."

This evidence met respondents' initial summary judgment burden. It demonstrates the allegation in the underlying complaint was not material. It was a legal conclusion that the turn was lawful and did not describe or misstate any specific facts about the turn. A bare legal conclusion such as the claim of legality here, contained within an attorney's unverified

14

complaint, is not something to which "a reasonable insurer would attach importance." (*Gillard*, *supra*, 57 Cal.App.4th at p. 151; cf. *Persson v. Smart Inventions, Inc.* (2005) 125 Cal.App.4th 1141, 1164 [distinguishing nonmaterial "forecasts" from specific facts underlying them].) Insurance companies — as respondents emphasize and as demonstrated by the CIGA declaration and the conduct of the insurers in the auto collision suit — do not simply accept as true conclusory allegations in an unverified, case-initiating legal pleading directed to their insureds. Nor do insurance companies limit their investigations based on them. Indeed, here, the litigation unfolded, the "legality" allegation was vigorously tested, and CIGA, representing a reasonable insurer, said it was not defrauded.

In response, Heath & Yuen did not present evidence that shows a dispute regarding the materiality of the complaint's claim. Instead, its evidence tends to support immateriality. The firm included photographs the van driver took "immediately after the incident" showing where the turn occurred and the driver's declaration that the McLaren's turn was illegal. But the accident occurred three months before Silver Bird filed suit. The insurer thus had concrete facts, through its insured, supporting the claim of illegality months before the contrary, but conclusory, claim appeared in the unverified complaint. Heath & Yuen did not produce any evidence, expert or otherwise, to undermine CIGA's testimony that supports the conclusion that a reasonable insurer would not have found the claim in the complaint material.

Accordingly, Heath & Yuen cannot establish respondents committed insurance fraud within the meaning of section 550 based on the complaint's allegation, and summary judgment was proper on this aspect of the firm's IFPA cause of action.

15

Because we find the unverified complaint's allegation immaterial, we do not address the parties' arguments about whether respondents were sufficiently involved in the complaint's drafting. Nor do we address here, or elsewhere in this opinion, any issues regarding the potential intersection of IFPA and the litigation privilege, which the parties do not raise.

### C. *Repair Estimate*

We next address Heath & Yuen's assertion that a fraudulent bill for the McLaren's repairs was produced in discovery during the underlying suit. The bill was fraudulent, alleged Heath & Yuen's complaint, because the owner of the repair company, Protective Film Solutions, told Heath & Yuen that "he had never issued such a document" and declared the company had no responsive documents to the firm's subpoena request.

Again, respondents met their initial burden to show the document did not convey false or misleading information about a material fact. They produced a declaration from the owner of Protective Film Solutions explaining why he had not produced the document in response to Heath & Yuen's subpoena. He had searched for documents using the McLaren's VIN, but the company uses VINs when it documents repairs, not when it generates estimates. Since the company provided an estimate for the McLaren but never completed repair work, the estimate could not be located with a VIN. The company, having later reviewed its records, located the estimate, which quoted roughly $7,000 solely for a "clear bra" protective coating.

Respondents also presented a declaration from the attorney who handled discovery in the prior litigation. Silver Bird had produced the document in response to a request for production

16

directed at Silver Bird, the plaintiff in the suit; Marchino had not produced the document. The parties in the prior litigation interacted with each other and had confirmed the document was an estimate, not a bill. In a response to a meet and confer letter, Silver Bird's attorney stated it had "provided repair estimates because those estimates are currently in [Silver Bird's] possession, custody or control." Lastly, Silver Bird's attorney noted that he had, well before settlement on multiple occasions in 2019, advised Heath & Yuen that Silver Bird was no longer pursuing repair-related damages in the prior litigation, a representation repeated in a 2020 joint court filing, as Marchino's insurer had paid for the repairs. The 2020 court filing was followed up by an email seeking consent from Heath & Yuen to file a formal amended complaint "remov[ing] the claim for collision damages" as the plaintiff would "hence be seeking to proceed in this case on the same theories of liability, but seeking" the non-repair forms of damage.

Further corroborating this, CIGA's declaration states it "became aware during the *Silver Bird* action that Mr. Marchino had collision coverage under his insurance policy with GEICO that covered the damage to the McLaren, and that GEICO had paid collision benefits for that damage." Further, "[a]fter GEICO paid the collision benefits to Mr. Marchino," CIGA "became aware that Silver Bird had withdrawn its claim for damages for the cost to repair the McLaren, but was continuing to pursue damages for loss of use and diminution in value." At bottom, "CIGA did not view Silver Bird's damages claims to be fraudulent."

In light of this evidence, Silver Bird's production of the protective coating estimate was not material under section 550. Silver Bird proffered the estimate in response to a discovery

17

request for materials within its possession.  And Silver Bird did so with the caveat that it did "not yet have the repair bill/work summary but [would] produce it upon receipt."  Respondents then withdrew the associated damages claim from the lawsuit once repairs had been completed and paid for and before negotiating a settlement amount.  As the declaration by CIGA suggests, a reasonable insurer would not have "attach[ed] importance" to the document, produced in the course of discovery, such that it could "bear directly and importantly on the investigation and evaluation of the bona fides of the claim."  (*Gillard*, *supra*, 57 Cal.App.4th at pp. 151, 152.)

Heath & Yuen pivots to argue the estimate is nonetheless materially fraudulent because the version the repair company provided to support the summary judgment motion was addressed to Marchino, whereas the version Silver Bird produced in the prior litigation was addressed to Silver Bird.  This, however, disregards the theory of fraud actually alleged in the IFPA complaint, which was that the entire document was fraudulent because the repair company declared it did not exist.  Even so, both versions of the document state the same estimate for the same potential work.  The only difference is the addressee.  Heath & Yuen has not produced any evidence that the version Silver Bird previously produced was fraudulent simply because the repair company later verified a version addressed to Marchino.  Further, Heath & Yuen has not shown how having two different addressees, both with potential interests in the repair estimate, affects the materiality analysis discussed above.  Heath & Yuen's speculative arguments to the contrary, without supporting evidence, do not carry the firm's summary judgment burden.  (See *Jones v. Wachovia Bank* (2014) 230 Cal.App.4th

18

935, 945–946 [speculation and conjecture are insufficient to oppose summary judgment].)

Heath & Yuen also argues the prior, now insolvent, insurer Gateway might have viewed the estimate differently, and materially, but it fails to offer a competing declaration from anyone associated with that entity, or any other insurance entity that might have shed conflicting light on the matter. Moreover, the test for materiality is objective, not subjective, and thus respondents did not need a declaration from Gateway to meet their summary judgment burden. Heath & Yuen then argues Silver Bird could not simply "retract" its estimate after payment for repairs occurred by other means, but that is the nature of an estimate and a reflection of both the pace that disclosures take in litigation and the imprecision of conveying information by document production. Finally, Heath & Yuen contends the estimate is dated one week after the date Silver Bird later contended the car was rendered operable. It is unclear why a car could not first be rendered *operable* before putting on a protective sealant, the work the estimate addressed.

### D. *GEICO*

Finally, we address Heath & Yuen's assertion that respondents failed to disclose in discovery in the prior litigation "a first party GEICO payment towards the damage to the McLaren" in violation of section 550, subdivision (b)(3).

We reiterate that this was not Heath & Yuen's argument and theory in opposing summary judgment and, accordingly, we find forfeiture. (See *ante*, Discussion, part I.) Even addressing this argument on its merits, however, we find no triable issue of material fact.

19

Concealment presupposes the other party's unawareness of the concealed fact. (Cf. *Rattagan v. Uber Technologies, Inc.* (2024) 17 Cal.5th 1, 40 [tort of fraudulent concealment requires, inter alia, lack of awareness]; *Bjoin v. J-M. Manufacturing Co., Inc.* (2025) 113 Cal.App.5th 884, 901.) As already discussed, CIGA, via Heath & Yuen, was aware of GEICO, its status as Marchino's insurer, and its payment for repairs. Also, CIGA and the firm knew respondents had retracted their claim for repair-related damages after Marchino received payment from GEICO. But more than that, Heath & Yuen also knew of GEICO as Marchino's insurer because it possessed, from the prior litigation, a picture of Marchino's insurance card showing this very detail.

CIGA, our stand-in for a reasonable insurer, found nothing fraudulent about the damages claims Silver Bird presented in the litigation and did not condone Heath & Yuen's IFPA fraud claims. CIGA also understood that civil discovery is an evolving process. It nonetheless agreed to settle even while Heath & Yuen was seeking GEICO-related discovery, showing again the lack of value of any missing information from GEICO. There was no material concealment.

In response, Heath & Yuen largely, and improperly, points to post-ruling materials that cannot create a triable issue of material fact. Its contention, that GEICO's coverage of repairs meant the remaining damages claims in the auto collision suit fell outside of CIGA's statutory coverage mandates, is unpersuasive. Silver Bird sued and settled with the prior defendants, who were alleged tortfeasors, and did not sue CIGA.

## DISPOSITION

We affirm the judgment.  Respondents shall recover their costs on appeal.


SCHERB, J.


We Concur:



WILEY, Acting P. J.



VIRAMONTES, J.

21